(15 App. Div. 364.)

## McMULLEN et al. v. HOPPER.

(Supreme Court, Appellate Division, First Department. March 5, 1897.)

1. CONTRACTS—INTERPRETATION—PAYMENT OF SUBCONTRACTOR.

A contract for building a city bridge provided for payment on monthly estimates of the work done, 15 per cent. of each payment to be reserved until 30 days after the final acceptance of the bridge by the city engineer. A subcontract for the piers, abutments, etc., provided for monthly payments to the subcontractors in the same manner as under the city contract, "except that the payment of percentage reserved shall be made on or before 30 days after the work embraced in this contract shall have been accepted" by the city engineer. On the completion of the subcontractors' work, they procured an acceptance thereof, and the contractor wrote them to send statement of account, as "I would like to clean up with you this time." Held, that the acceptance of the subcontractors' work, after which they were entitled to the reserved payments, was a separate acceptance thereof when completed, and not an acceptance of that part of the completed bridge. Ingraham and Patterson, JJ., dissenting.

2. SAME—PRACTICAL INTERPRETATION BY PARTIES.

A contractor and subcontractor are concluded by a practical interpretation of a provision that the contractor shall furnish all pier stone for the bridge piers contemplated by the subcontract, as requiring the stone furnished to be cut and fit for use.

Appeal from judgment on report of referee.

Action by Arthur McMullen and another against Isaac A. Hopper. From a judgment in favor of plaintiffs, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles W. Dayton, for appellant.

L. Laflin Kellogg, for respondents.

O'BRIEN, J. The plaintiffs sued upon four causes of action, one of which was admitted, and under the other three they were allowed to recover. The single question upon the referee's rulings which requires discussion relates to his holding that the plaintiffs were entitled to recover $37,079.97, included in their undivided first cause of action, which was 15 per cent. reserve on plaintiffs' entire work. It is not disputed that the work has been done to the satisfaction of the chief engineer, and that the plaintiffs will ultimately be entitled to recover the amount. It is insisted, however, that the action was prematurely brought, the defendant claiming that, at the time of the commencement thereof, the plaintiffs' work had not been accepted by the chief engineer in charge of the work under the city contract, and that the plaintiffs were not entitled to the 15 per cent. reserve until 30 days after the completion of the entire city work, and that, conceding the plaintiffs to be entitled to the percentage within 30 days after acceptance of their particular work, they failed to show an acceptance 30 days

prior to the bringing of this action. The plaintiffs, on the other hand, claim that, by the terms of their contract, they were not ·obliged to wait until the defendant received the 15 per cent. reserve from the city, but that this they were entitled to "on or about thirty days after" the city's engineer had accepted their work, and that the latter had accepted it more than 30 days prior to the com- ·mencement of this action. If the defendant's construction of the ·contract is right, that the percentage reserved was not payable un- til 30 days after the completion of the entire city work, as this was ·not completed when the action was commenced, then the action was ·prematurely brought. The determination of this question neces- ·sarily involves the construction of the contract between the parties; ·and, as this was subsidiary to the main one between the defendant ·and the city, the latter contract may be referred to for the purpose of making certain what the parties meant by the language used in the contract between them.

Upon the question of payment, it was provided in the contract between the defendant and the city as follows:

"The engineer shall, from time to time, as the work progresses, but not oftener ·than once a month, make an estimate of the amount of work done under this con- tract since the last preceding estimate was made, and of the value thereof, ac- cording to the terms of this contract. Upon such estimate being made, eighty-five per cent. of such estimated value shall be paid to the said party of the second part. And whenever, in the opinion of the said engineer, the party of the second ·part shall have completely performed this contract on his part, the said engineer shall certify the same in writing to the commissioner of public works, together with his estimate of the whole amount of materials furnished and work done in such performance by said party of the second part, and of the value of such work ·and materials under and according to the terms of this contract. Thereupon the parties of the first part will, on or before the expiration of thirty days after such completion and the delivery of said certificate, pay to the said party of the ·second part, in cash, the whole amount of money accruing to the said party of the second part under this contract. * * *"

The contract between these parties recites the fact that a con- ·tract had been entered into between the defendant and the city, that the plaintiffs offered to do a portion of the work, and that said ·bid had been accepted. Then follows the agreement of the plain- tiffs to perform, under the direction of the engineers employed by ·the mayor, etc., "and in conformity with the plans and specifica- tions referred to in said contract, all the pneumatic work describ- ·ed," etc. And upon the question of payments the provision is as ·follows:

"Payments to be made monthly at the times and in accordance with the pro- visions of the said contract between the party of the first part and the city of New York, excepting that the payment of percentage reserved shall be made on or before thirty days after the work embraced in this contract shall have been ac- ·cepted by the chief engineer in charge of the said city contract."

By the terms of both contracts, the monthly payments are to be ·made at the times and in accordance with the provisions of the city contract; but under the McMullen-Hopper contract, which is the ·one here involved, the reserved percentage is specially excepted from the provisions of the city contract. That this difference ex- ·ists in the contracts is conceded, the provision as to payment of

the reserved percentage in the city contract being expressly excepted from operation in the McMullen-Hopper contract. It is contended by the defendant, however, that all the provisions of the city contract relating to the payment of the reserved percentage are effective against the plaintiffs up to and including the final certificate of the chief engineer, after which final acceptance plaintiffs are relieved by the exception in their contract; and that the purpose intended to be served by this exception was to relieve the plaintiffs from that part of the city contract which, after directing the payment, provided "that nothing herein contained be construed to affect the right hereby reserved of said commissioner to reject the whole or any portion of the aforesaid work, should the said certificates or any of them be found or known to be inconsistent with the terms of this agreement, or otherwise than properly given." To relieve the plaintiffs from this provision, it is insisted, was the only object of incorporating in the McMullen-Hopper contract the exception as to the reserved percentage. This is a concession that plaintiffs were not to be affected by a rejection of any portion or the whole of the work by the city; and it is clear, therefore, that, as no final certificate would in that event be given, it was not intended to have plaintiffs' right to the reserved percentages dependent on the final certificate. Apart from the inconsistency involved, we think that such a construction is not only strained, but, in view of the attitude of the parties and what they were contracting about, does violence to the language used. The defendant had taken a contract for the construction of the entire bridge, and had sublet to the plaintiffs "the pneumatic work," which involved that portion of the work under water, and in connection with the piers and abutments which were to sustain the superstructure of the bridge. Both contracting parties knew what the testimony here shows, and therefore it is to be presumed that it was within the contemplation of the parties, when contracting, that, after the pneumatic work was completed, it would require two years or more to place the superstructure thereon and complete the bridge. The pneumatic work was a complete thing in itself, and might well have been the subject of an independent contract by the city, because in no way would it interfere with the details of the other portions of the work connected with the superstructure, which latter could not be even commenced until the pneumatic work was completed. Under defendant's construction, the plaintiffs would be obliged to wait two years or more before receiving their money, although they had done their work to the satisfaction of the chief engineer, and it had been examined and accepted by Hopper. It was to avoid any such result that the contract in words and terms provided that the work should be accepted, and the payment of the reserved percentage made, on or before 30 days after the work embraced in the contract between the plaintiffs and the defendant should have been accepted by the chief engineer in charge of the city contract, because, as we must observe, the exception removes the reserved percentage from the operation of the terms and provisions of the city contract, and

the work to be so accepted is that embraced in the McMullen-Hopper contract, and not that in the city contract; the language being, "The work embraced in this contract shall have been accepted," etc. As correctly urged, therefore, by the respondents, if it had been intended that the payment for the plaintiffs' work should not be made until the city contract was performed, this exception would not have been made as to the reserved percentage, and a separate certificate as to this work would not have been required. It must be remembered, moreover, that the completion of the city contract was something over which the plaintiffs had no control. The defendant might abandon the work under the city contract before completion, and never complete it. Hence this clause was inserted, providing a different method of payment under the McMullen-Hopper contract from that provided in the city contract as to the reserved percentage.

In cases of doubt we have frequently resorted to the construction which the parties themselves have given to the language used. The plaintiffs concededly completed their work in September, 1895, which was more than 30 days before this action was commenced. At that time the city's engineers measured up the work, and made and delivered a certificate to the defendant, covering, with other work, the entire amount of work called for and to be done by the plaintiffs under their contract. Thereafter the plaintiffs went to the chief engineer, and asked him if the work was satisfactory, and if he would accept the same, and to both he assented. The chief engineer testified that in September the work was completed; that he ordered it to be measured up, and did make a decision accepting the work, which had never been set aside. It is true that the McMullen-Hopper contract did not provide the manner or form in which the work of the plaintiffs should be accepted by the chief engineer. It did not provide that such acceptance should be evidenced by a certificate or by any instrument in writing. It simply provided for payment 30 days after acceptance. Great stress is placed upon this omission, as tending to show that the word "acceptance," as used, was equivalent to the requirement of a written certificate at the time and in the manner provided for in the city contract.

It is contended that by the city contract the chief engineer was not obliged and had no right to bind the city by accepting the plaintiffs' work, there being no provision for his giving a separate certificate; and, further, that the city would not be bound by any acceptance prior to the final certificate of the chief engineer. All this turns upon the one central idea that the final certificate of the engineer, as provided for in the city contract, was not only a condition precedent, but a sine qua non, to the plaintiffs' recovery of their portion of the reserved percentage. To such an argument there naturally occur two answers,—one furnished by the contention of the defendant, who, in explanation of the difference between the language used in his contract with the plaintiffs and that in the city contract, states that it was intended to prevent the plaintiffs being affected in any way or delayed by reason of the refusal of the chief

engineer to give the final certificate in case he should reject any portion of the work other than that performed by the plaintiffs. The defendant concedes that if the work was completed as he understood it, and a dispute should arise, not with reference to the plaintiffs' work, but in regard to defects in the superstructure, from which there might result a refusal on the part of the chief engineer to furnish the certificate, then, without any such certificate, under the language of the McMullen-Hopper contract, the plaintiffs would be entitled to recover. This seems to us to be a concession that, whatever the importance and weight to be attached to a final certificate as between the defendant and the city, it was not to figure so prominently or play any such significant part in determining the plaintiffs' right to their portion of such reserved percentage. Again, we think that an argument which would hold the plaintiffs rigidly to the terms of the contract between the defendant and the city, over which they had no control, proceeds upon an entirely erroneous theory. The parties, as between themselves, were perfectly competent to enter into a contract for any specific portion of the work, to be paid for by the defendant, irrespective of when, according to the terms of his contract with the city, he was to receive payment for the same work; and they could have agreed as to any means of determining whether the work was satisfactorily done, and could have left it, as they did here, to the judgment of the chief engineer. That the latter understood that under the McMullen-Hopper contract the acceptance of the plaintiffs' work was left to him clearly appears from the certificate which he actually did give, and from his testimony. In addition, we have the certificates of the other engineers upon the work and the city officers, which covered the entire amount of the plaintiffs' work; and, even though we assume that the city would not be bound by any acceptance of all the engineers on the work and the certificates of the city's officers in charge of it prior to the final certificate of the chief engineer and the department of public works, this, at most, would be a question between the defendant and the city under the city contract, with which the plaintiffs had nothing to do, over which they had no control, and by which they were not bound except so far as they contracted to be bound. As already said, without regard to the terms of the city contract, the plaintiffs and defendant could contract in reference to some portion of the work; and if the plaintiffs fully performed such contract, and after its completion secured the acceptance of the one who, by the terms thereof, was selected by both parties as the arbitrator, then, having fulfilled all the conditions, they would be entitled to recover. And, in addition to the practical construction placed upon the contract by the plaintiffs and the chief engineer and city officers, we have a letter of the defendant, dated October 7th, which is significant as to the view which he took, and which was written after the city estimates had been made by the engineer, as follows: "As I received a check from the city to-day for September estimate on Third Avenue Bridge, please send me statement of your account. I would like to clean up with you this time, if I can." While, there-

fore, we think that the language of the McMullen-Hopper contract expressly excepts the reserved percentage from the provision of the city contract, and provides that payment shall be made when the plaintiffs' work shall be accepted by the chief engineer, all doubt as to the true construction is removed by the practical construction given to this language by all the parties. To say that the exception as to payment of the reserved percentage is to be read as though the contract stated that such payments were to be made as provided in the city contract would render this clause meaningless; for, instead of making an exception as to the payment of the reserved percentage for the work embraced in "this contract," it would thus be made to read that such payments should not be excepted, but should be made in the manner provided for in the city contract.

As in our view, therefore, the parties intended to be bound by the determination of the chief engineer, the question litigated as to the date of acceptance by him was, upon the conflicting evidence, one of fact. It is not disputed that the work was completed in September, or that certificates were then given by the city to the defendant covering all the work embraced in the plaintiffs' contract. Upon the question of the actual acceptance of the work, it was shown that the engineer ordered the succeeding work upon the contract to proceed, which impliedly involved an adoption of the plaintiffs' work. In addition, there was evidence tending to support a verbal acceptance by the chief engineer. As against this, upon the date of actual acceptance, we have the letter of the chief engineer to the plaintiffs, dated March 13, 1896, in which he says: "The work was accepted by the chief engineer December 1st, 1895." With much plausibility it has been suggested that the acceptance in December, referred to in the letter, was an affirmance only of acceptance made in October, 1895, not involving in any manner the work, but a reclassification of items involving about $50 or $60. As we have said, therefore, upon this evidence as to the date of actual acceptance there was a conflict, which the referee has resolved in plaintiffs' favor; and, as against the view taken by him, the evidence is not so preponderating as to justify our disturbing his conclusion.

In this connection our attention is called to the ruling of the referee in preventing the chief engineer from stating the date of actual acceptance. If we assume this was not a conclusion to be drawn from all the facts, and was therefore erroneous, it would not justify our reversing this judgment, because what was said and done by the engineer bearing upon the question of acceptance, including his own examination upon that point, was fully gone into; and if he had, in answer to the question, given December 1st as the date of acceptance, which was the one fixed by his letter, it would still have left the question one of fact. The verbal statement by the engineer, however, that the date was December 1st,—assuming that that would have been his testimony,—would make the case no stronger than it was by the introduction of his letter, the force of which is to be measured, not by his verbal assertion alone, supporting that date, but by what he said and did with respect to an actual acceptance.

The other items included in the judgment are fully discussed by Mr. Justice INGRAHAM in his opinion, and in his conclusions thereon we concur.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and WILLIAMS, J., concur.

INGRAHAM, J. (dissenting).    The action was brought to recover the amount due upon a contract, whereby the plaintiffs, as subcontractors, agreed "to do and perform, under the supervision and direction of the engineers and assistant engineers employed by the mayor, aldermen, and commonalty of the city of New York, and in conformity with the plans and specifications referred to in said contract, all the pneumatic work (except as hereinafter specifically mentioned) described and called for under paragraphs 25, 32, 34, and 35 of the said original contract between the party of the first part and the mayor, aldermen, and commonalty of the city of New York."    The complaint alleges four causes of action, and the answer alleges a counterclaim which presents substantially the question as to whether or not it was the duty of the plaintiffs or of the defendant to cut the stone used and required under the contract, over and above the old abutment stone which was found on the premises suitable for said use, the expense for the cutting of some of which is sought to be recovered in the third cause of action.    It seems that three separate items allowed by the referee, aggregating $8,682.-37, are not questioned by the defendant.    There are four items allowed by the referee to which the defendant objects, together with the disposition made by the referee of the defendant's counterclaim. The first and principal item is the amount $37,079.97, and interest thereon, which represents reserved payments.    This action seems to have been commenced on the 21st day of November, 1895, after the work done under the contract had been completed by the plaintiffs.    By the contract it was provided:

"Payments to be made monthly at the times and in accordance with the provisions of the said contract between the party of the first part and the city of New York, excepting that the payments of percentage reserved shall be made on or before thirty days after the work embraced in this contract shall have been accepted by the chief engineer in charge of the said city contract."

It is quite clear that, under this provision, to ascertain what was intended as to the time of payment for the work done, reference was made to the provisions of the contract between the defendant and the city, under which the defendant had contracted to build the bridge, a portion of the construction of which the plaintiffs agreed to perform.    This provision of itself would be meaningless, except by reading into this contract the provisions made in the contract between the defendant and the city of New York as to the conditions of the payments to be made by the city to the defendant.    In fact, the whole of this contract is based upon the contract between the city and the defendant, the work that the plaintiffs were to do being that described in certain clauses of the city contract; and it was clearly contemplated by the parties that a reference to that contract

should be necessary to determine just what the plaintiffs were required to do, and the manner in which the work was to be done; and the liability of the defendant to the plaintiffs for such work was to depend upon the acceptance by the city of the work done by the plaintiffs as a portion of the work that the defendant under his contract was to do in the erection of the bridge. The making of the contract between the defendant and the city was expressly recited as the basis upon which this contract was made; and it was also recited that the plaintiffs had made a bid or offer to do a portion of that work which the defendant was to do under his contract with the city. Neither the work that the plaintiffs had to do, the time in which it was to be done, nor the time of the payment for the work done, could be ascertained, except upon a consideration of the terms of the contract between the defendant and the city. The rights and obligations of the parties, and whether or not the payment of this "percentage reserved" was due at the time of the commencement of this action, must therefore depend upon this clause of the contract between the plaintiffs and the defendant before recited, in connection with the clause of the contract between the city and the defendant which provides for the payment by the city to the defendant of the consideration on account of such city contract. Thus, by the contract between the plaintiffs and the defendant, the payments were to be made monthly, "at the times and in accordance with the provisions of the said contracts between the party of the first part and the city of New York, excepting that the payments of percentage reserved shall be made on or before thirty days after the work embraced in this contract shall have been accepted by the chief engineer in charge of the said city contract." The provision as to the payments under the said contract is found in Clause Q, in which it is provided that:

"In order to enable the said contractor to prosecute the work advantageously, the engineer shall, from time to time, as the work progresses, but not oftener than once a month, make an estimate of the amount of work done under this contract since the last preceding estimate was made, and of the value thereof, according to the terms of this contract. Upon such estimate being made, eighty-five per cent. of such estimated value shall be paid to the said party of the second part [the defendant]."

Thus, reading the two contracts together, it is clear that it was the intention of the parties that upon said monthly estimate being made by the engineer, where the monthly estimate included any portion of the work done by the plaintiffs under this contract, 85 per cent. of the cost of such work was to be paid by the defendant to the plaintiffs. It is conceded, as I understand, that the city engineer has under these estimates included all of the work done under this contract, the plaintiffs thus being entitled to receive 85 per cent. of the total amount of the work done; and that there has been paid to the plaintiffs the total amount of such 85 per cent., except the sum of $8,269.75. In addition to that, it appears that the 15 per cent. of such monthly estimates under the contract, aggregating $37,079.47, is still unpaid by the defendant; and the question is presented as to whether or not that sum was due at the time of the commencement

of the action.    The clause in question in the contract between the
city and the defendant further provides, as to this 15 per cent. reserved payment:

"And whenever, in the opinion of the said engineer, the party of the second part
[the defendant] shall have completely performed this contract on his part, the
said engineer shall certify the same, in writing, to the commissioner of public
works, together with his estimate of the whole amount of materials furnished
and work done in such performance by said party of the second part, and of the
value of such work and materials, under and according to the terms of this con-
tract.  Thereupon the party of the first part [city of New York] will, on or before
the expiration of thirty days after such completion and the delivery of said cer-
tificate, pay, and they hereby bind themselves and their successors to pay, to the
said party of the second part, in cash, the whole amount of money accruing to the
said party of the second part under this contract, excepting such sum or sums
as shall have been paid to the said contractor under any of the foregoing pro-
visions of this contract:  *  *  *  Provided, that nothing herein contained be con-
strued to affect the right hereby reserved of the said commissioner to reject the
whole or any portion of the aforesaid work, should the said certificates, or any of
them, be found or known to be inconsistent with the terms of this agreement, or
otherwise improperly given."

Clause S of the contract is as follows:

"And it is hereby expressly agreed and understood by and between the parties
hereto that the said parties of the first part, their successors and assigns, shall
not, nor shall any department or officer of the city of New York, be precluded or
estopped by any return or certificate made or given by any engineer, inspector,
or other officer, agent, or appointee of said department of public works, or said
parties of the first part, under or in pursuance of anything in this agreement
contained, from at any time showing the true and correct amount and character
of the work which shall have been done and materials which shall have been fur-
nished by the said party of the second part, or any other person or persons, under
this agreement."

And by clause T it is provided:

"It is further expressly understood and agreed by and between the parties here-
to that the action of the engineer by which the said contractor is to be bound and
concluded, according to the terms of this contract, shall be that evidenced by his
final certificate, all prior certificates upon which partial payments may be made
being merely estimates, and subject to the correction of such final certificate,
which final certificate may be made without notice to the contractor thereof, or
of the measurements upon which the same is based."

Reading these provisions of the city contract in connection with
the contract as to these reserved payments between the plaintiffs
and the defendant, we understand what was intended by the term
"reserved payments"; that being the 15 per cent. of the amount for
work done under the contract, which was not included in the month-
ly payments made by the city to the defendant, but was held by
the city as reserved payments until the completion of the work and
the granting of this final certificate under the contract.    This 15
per cent. was not to be paid to the defendant until this final certifi-
cate was granted.    By the express provisions of this contract, the
right of the city to determine whether or not any particular work
was done in accordance with the contract was reserved until the
final completion of the work.    The determination by the city that
said work was in accordance with the contract was to be evidenced
only by the final certificate of the engineer in charge of the work.
Thus, nothing that the defendant could do, nothing that any officer

of the city could do, could estop the city authorities, when the work was finally completed, and when the time came for the engineer in charge to determine whether or not the work done was, as a whole, in conformity with the contract, from showing at that time that any portion of the work provided for in the contract between the defendant and the city was not in accordance with the terms of the contract; and it cannot be disputed, I think, that when these plaintiffs undertook to do a portion of this work, provided for by this contract between the defendant and the city, they undertook to do it in accordance with the terms and conditions of that contract, and to receive their compensation at the times and under the conditions upon which the city was to pay the defendant. We must, then, determine what the parties meant by the term "accepted by the chief engineer in charge of the said city contract." The dependence of these two contracts upon each other shows clearly, I think, that it must have been the intention of the parties that this acceptance by the engineer in charge of the city contract was the acceptance provided for by the contract itself, by which the city was to be bound. Under the contract between the defendant and the city, the only acceptance by the chief engineer that was binding upon anybody was the acceptance by the giving of the final certificate. By the express provisions of the contract, no return or certificate made by any engineer, inspector, or other officer of either the department of public works or the city should preclude or estop the city from at any time showing the true and correct amount and character of work done and materials furnished by the contractor or any other person or persons under the contract. Thus, under this contract as it stood, no acceptance by the engineer until the final completion of the work would have bound the city. Nor, under the provisions of clause T, would any action of the engineer, at any time prior to the giving of his final certificate, be any evidence against the city as to the proper performance of any portion of the work done under the contract by either the original contractor or any subcontractor or any other person whatever. It must have been contemplated, we think, between the parties, that an acceptance by the engineer was to be an acceptance binding upon somebody, and certainly not an acceptance evidenced merely by a conversation had with the engineer during the progress of the work.

The defendant is now in this position: Although the work has been done which the plaintiffs agreed to do under their contract, the city may at any time show that the work has not been done in accordance with the terms of the contract, and it may refuse to accept such work as a completion of the contract. As before stated, the whole contract between the parties hereto was in relation to a part of the work that the defendant was to do under his contract with the city. Reference to the main contract was made necessary to determine what the plaintiffs were to do, and when they were to be paid, and what was meant by monthly estimates and by reserve payments. It seems to me clear that we must also look to the contract between the defendant and the city to see what was meant by the acceptance by the chief engineer in charge of the said city con-

tract, and that it was intended that it was to be an acceptance by which the city was to be bound,—an acceptance on behalf of the city of the work that the plaintiffs did as a part of the defendant's contract with the city, which would entitle the defendant to be paid by the city for that work as a part completion of his contract. The form of this provision excepting the payment of percentages reserved bears out, it seems to me, this construction. The 85 per cent. was to be paid monthly, in accordance with the provisions of the contract. The reserved payments were to be made on or before 30 days (the same time within which the final payment was to be made by the city to the defendant) after the work embraced in the contract had been accepted by the chief engineer. The fact that the payment of the percentages reserved was not to be made monthly was the reason for the exception of their payment from the former provisions as to monthly payments. It might appear that at the end of the contract, when the work was completed, the engineer of the work, while accepting the portion done by the plaintiffs, had rejected some other portion of the work done by the defendant. In such a case, where that was made clearly to appear, undoubtedly a failure to give a final certificate for the whole work would not stand in the way of the plaintiffs' recovering the reserved payment for the work that they had done, and which had then been accepted by the engineer as a compliance with the contract. But until the engineer had either accepted the whole work by his certificate, or had, by his action, accepted the work that the plaintiffs had done as a part compliance with the contract, in such a way as to place the city in the position of being bound by such action of its officer, so that it could not dispute its obligation to accept the work done by the plaintiffs as a part of the city contract, it seems to me clear that the time for the payment of these "reserved payments" had not arrived, and that the liability of the defendant to pay the amount of the reserved payments to the plaintiffs had not accrued.

I think also that there was no evidence to show that the city engineer had accepted the work in any way prior to the commencement of the action. A letter was introduced, dated March 13, 1896, in which he certified that the full amount of the work done on the piers in the bridge had been estimated, and returned in the estimate made under the defendant's contract with the city. That, of course, could have referred only to the provisional estimates upon which the 85 per cent. payment was made. The statement at the bottom of the latter that the work was accepted by the chief engineer December 1, 1895, could only refer to an acceptance under these provisional estimates, which, under the express provisions of the contract between the defendant and the city, were not to be binding upon the city when the final certificate was made. But this letter was a mere declaration of the chief engineer's, written after the commencement of the suit; and, if it was of any value at all as evidence, it could only be used as evidence of an acceptance after the commencement of the action, viz. December 1, 1894. The testimony of the chief engineer does not show that he has finally accepted this

work as a compliance with the contract. Nothing in his testimony would estop or prevent him, upon the completion of the work, from showing that the work had not been done in accordance with the provisions of the contract. His evidence as to his acceptance of the work is extremely vague and unsatisfactory, and I think it falls far short of being evidence sufficient to justify a finding that he ever has definitely accepted the work as a compliance with the defendant's contract. It seems to me entirely clear that there is no evidence to justify a finding that the work done under this contract has ever been accepted by the engineer in charge of the said city contract. It follows, therefore, that the plaintiffs were not entitled to recover the amount of such reserved payment and interest.

I agree with the referee as to the other items that he allowed.

So far as the cutting of the stone is concerned, it seems to me clear that, under the terms of this contract, the defendant, being obliged to furnish the stone to be used in building the pier, was to furnish the stone fit to be used for that purpose, not mere rough blocks or bowlders, which could be cut, and, after being cut, would be fit for the purpose. By the second clause of the contract, it is agreed that "the party of the first part shall furnish and provide, at his own cost and expense, all the pier stone used and required under this contract, over and above the old abutment stone which may be found on the premises suitable for said use." In the third clause of the contract, relating to work designated in item 34, which provides for face stones, it is provided that the parties of the second part were to use the old abutment stones suitable for said use, the balance to be furnished by the party of the first part; and in speaking of item 35, which relates to the face stone of that part above low water, which is to be first-class granite, and maintained uniformly over the face of all the piers, the provision is that the stone ashlar is to be furnished by the party of the first part. No reason is suggested why the agreement to furnish the stone did not contemplate stone fit to be used under the terms of this contract, not mere blocks of stone, which had to be manufactured before being used. It does not appear that at any time during the course of the work the defendant claimed that the plaintiffs were bound to cut this stone. No demand was ever made upon them to do so, nor was the uncut stone tendered to him upon the work, the parties having apparently construed the contract to mean that this cutting of the stone should be done by the defendant; and, there being nothing in the contract to call for any other construction, it is too late for the defendant to now claim that this work done by him as a compliance with the contract should be paid for by the plaintiffs.

We also think that the referee was clearly right as to the removal of the old iron piers above the water line. The removal of the piers was expressly provided for by item 11 of the contract; and with the performance of that item the plaintiffs had nothing to do. It was there provided that the defendant was to remove the columns of rest piers down to a depth of 20 feet below low water. He was also to remove the outer circle of columns of pivot pier to a depth

so as not to interfere with roof of caisson air chamber; and the mere fact that this removal of the circle of columns of pivot pier, forming the present pivot pier, is also mentioned in item 25, would not throw the burden upon the plaintiffs of doing that work which was expressly provided for by item 11 of the contract.

As to the liability for the $210 for cutting stone, that is included in the affirmance of the dismissal of the counterclaim, as is also the allowance of $750 for the delay of the plaintiffs in furnishing stone required to do the work.

We think, therefore, the judgment should be modified by deducting from the amount allowed to the plaintiffs the sum $37,079.47, and the interest thereon, $1,636.27; and also deducting the amount of the allowance of $1,000, and the interest from the date of the report to the entry of judgment, $136.98,—making an aggregate of $39,852.72, and making the amount of the judgment in favor of the plaintiffs the sum of $14,082.19. As so modified, the judgment should be affirmed, without costs.

PATTERSON, J.   I concur in the view taken by Mr. Justice IN-GRAHAM that the action was prematurely brought as to the first cause of action.