(21 App. Div. 533.)

PEOPLE v. COMMERCIAL ALLIANCE INS. CO.

PLATT v. GILBERT.

(Supreme Court, Appellate Division, First Department. November 5, 1897.)

LIFE POLICY—CONSTRUCTION.
    Where the terms of a policy of life insurance are so conflicting and ambiguous as to leave it uncertain whether premiums must be paid upon a given day in a month, or may be paid at any time during that month, the company will be bound by a practical construction given for a considerable period by its notices, and acted upon in accepting payments, and cannot of itself thereafter change the contract as thus construed.

    Barrett, J., dissenting.

Appeal from special term.

Action by the people of the state of New York against the Commercial Alliance Insurance Company. William T. Gilbert was appointed receiver. From an order overruling exceptions to referee's report on the claim of George F. Platt, the receiver appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

R. B. Aldcrofft, Jr., for appellant.
A. S. Luria, for respondents.

PATTERSON, J. The only question arising in this case relates to the contention of the receiver that the policy on which the claim presented by these claimants was based was not upon an outstanding and valid risk at the time of the death of James H. Platt, the assured. Mr. Platt died August 13, 1894. The policy was issued in June, 1890. Premiums were payable bimonthly. and it is an undisputed fact in the case that all premiums were paid up to and including that for the month of December, 1893. On the 29th of January, 1894, Mr. Platt sent by mail to the insurance company, in the city of New York, his check for the premium payable in February of that year, which check was not received until the 5th of February, 1894; and on the 17th of that month the company returned the check to Mr. Platt, with a notification that the remittance was too late, and that the premium was due on the 1st of February. Although not in terms a declaration that the company elected to forfeit the

policy, its act in returning the premium was tantamount to such a notification. The insurance effected by this policy was yearly insurance, although the premium was payable bimonthly. It is so referred to in the policy, the reference to the premiums being made in connection with the statement that they are to be paid during each policy year of the continuance of the policy; and there is also a provision that, if the contract be terminated by death, the amount of unpaid premiums that might otherwise have fallen due during the policy year will be deducted from the sum insured. The referee found that the contract made by the policy was in full force at the time of Mr. Platt's death, and allowed the claim at the face value of the policy minus the premiums for the current policy year of 1894.

The conclusion reached by the referee was right. The policy was an outstanding one, and in full force, in February, 1894, at the time it was repudiated by the company, upon the pretext that the February premium was not paid in time. By the terms of the policy, it is provided as follows:

"The said company further agrees to renew and continue this insurance in full force during each period of two months thereafter so long as there shall be paid to the said company, as hereinafter provided, on the first days of August, October, December, February, April, and June, during each policy year of the continuance of this policy, the premium contained in the table on the margin of this policy."

There was also contained in the policy this specific statement:

"Premiums will be payable during the months of February, April, June, August, October, and December."

There was a further provision that, in case any further payment or premium required or agreed to be made at any time on account of the policy should not be paid when due, thereupon the contract should become and remain null and void and of no effect. In the table of premiums is contained a statement of what premiums are payable during the specific months for each $1,000 insured. It thus appears from the policy that in one of its provisions payment is required to be made on the first days of certain specified months, and in other provisions of the same policy that the premiums may be paid during those months. The construction of the policy, in view of these apparently inconsistent provisions, was given by the company itself in all of its dealings with Platt, the assured, prior to June, 1893. When the first premium fell due after the policy was issued, a notice was given by the company to the assured stating that the premium for August, 1890, would be due on the 1st of August; and unless it were paid before the 1st of September, 1890, the policy would be void, and the payments under it forfeited. A similar notice, according one month's grace for each successive bimonthly premium, down to and including June, 1893, was given; and, pursuant to those notices, the assured made his payments on the policy some time within a period of 30 days after the 1st day of the month upon which such premiums were payable. Receipts for premiums were also given prior to August, 1893, upon the back of which was a written notification that the premium must be paid on or before the day it becomes due, "or within the thirty-days grace allowed." Subse-

·quent to June, 1893, the words quoted as to grace were omitted from the indorsement of the receipts, but the receipts were in every other respect identical in shape and color of paper and general character-istics.    In July, 1893, a notice was sent by the company to Platt, the assured, requiring payment for the August premium on the 1st day of that month.    No reference whatever was made to its pay-ment during the month or to an allowance of 30 days' grace.    Sim-ilar notices were sent after that month up to February, 1894.    The October premium, 1893, was paid on the 28th of September, 1893; the premium for December, 1893, was paid on the 15th of November, 1893; and, as stated, the premium for February, 1894, was attempted to be paid by a check mailed on the 29th of January, 1894.

It is apparent from the foregoing statement of facts that in all of its dealings with Platt, the assured, prior to September, 1893, the insurance company placed its own construction upon the require-ments of the policy respecting the payment of premiums, not only by its course of business in accepting premiums during the month upon the 1st day of which they were technically due and payable, but, by its express notices to the assured, informed him that he had 30 days after the 1st day of the month in which to pay each of the premiums necessary to keep the policy alive.    To this so-called "grace" the assured was entitled by the terms of his policy, under the construction given to it by the company itself.    That such con-struction given by the company to this contract will be that adopted by the court has been held.    Dodge v. Zimmer, 110 N. Y. 48, 17 N. E. 399; Dutcher v. Insurance Co., 3 Dill. 87, Fed. Cas. No. 4,202; Reynolds v. Insurance Co., 47 N. Y. 597; McMullen v. Hopper, 15 App. Div. 369, 44 N. Y. Supp. 63.

The terms of the contract cannot be changed by the simple act of the company itself.    It had no right to do so in the manner in which it sought to accomplish that end.    The omission of the 30 days' margin of time from the printed indorsement on the receipts, and from the notices, cannot operate to make a new contract with the insured; nor can it be claimed that he acquiesced in a change of the contract simply because he paid some of the later premiums before the 1st day of the month on which they became due.    That was a right he had under the original policy, and the mere fact that he availed himself of it in later instances is not to be construed as an assent on his part to a modification of the contract. ·

The order overruling the exceptions, and confirming the referee's report, must be affirmed, with costs.

VAN BRUNT, P. J., and RUMSEY and WILLIAMS, JJ., concur.

BARRETT, J. (dissenting).    The respondents' claim is based upon a policy of insurance in their favor in the defendant company, upon the life of James H. Platt.    This policy was a substitute for a pre-vious one, held by the insured in the National Alliance, a company which consolidated with the Commercial Alliance.    The policy in suit was issued July 1, 1890, and by its terms expired on the 1st of the following month; but it was provided that:

"The said company further agrees to renew and continue this insurance in full force during each period of two months thereafter, so long as there shall be paid to the said company, as hereinafter provided, on the first days of August, October, December, February, April, and June, during each policy year of the continuance of this policy, the premiums contained in the table on the margin of this policy."

Mr. Platt paid these bimonthly premiums, and the company accepted them without dispute, until February, 1894. On January 29, 1894, he mailed a check from Denver Mills, Colo., to the company's office in New York, for the February premium. The policy required that all payments should be made to the home office of the company, and, as the check did not arrive until February 5th, it elected to forfeit the policy, claiming the right to do so because the money was not paid on or before February 1st. The insured died in August of the same year; and the respondents presented a claim under the policy, which was rejected, upon the ground stated. Whether that action was justified is the question for decision.

The policy, as we have seen, provides for payment of premiums "on the first days" of the months specified. There is, of course, no ambiguity here; but it is said that other portions of the policy raise one. Two provisions are relied upon. Section 9 makes the table of premiums part of the policy, and that table is headed, "Table of Premiums for Each $1,000 Insured, Payable During the Months of June, August, etc., as Provided in this Policy." The wording of this heading cannot conflict with the policy provision, since it distinctly refers to it, and makes it controlling. A payment on the 1st of a month is a payment during the month, and the heading to the table might be correctly paraphrased so as to state that the premiums were payable during that portion or on that day of the month specified in the policy. The other provision relied upon is section 5 of the application for the policy in the National Alliance. This policy did, in express terms, allow payment of premiums at any time during the months in question; and a provision to that effect somewhat unnecessarily found its way into the application blank, along with the printed questions put to those seeking insurance. The policy in suit stated that it was issued in consideration of the surrender of the former policy, and "of the declarations contained in the application for said policy, which declarations are hereby made part of this contract." The meaning of this is entirely clear. The second policy, like the first, was made to depend upon the truthfulness of the information furnished by the insured. Without such a provision, neither policy could safely have been issued. The word "declaration" has a perfectly proper and sufficient office to perform if taken to mean simply the applicant's answers to questions. That is the simple and natural construction of it. There is scarcely more reason for making it include this misplaced provision as to payment of premiums than the printed questions put to the applicant. A provision constituting one term of a policy cannot well be called a "declaration"; and the context makes it clear that it was not so used here. The company made its agreement with the deceased in consideration of, among other things, the answers contained in the application for the old policy. A consideration implies something done or parted with by the in-

sured.    His answers, with the implied guaranty of their truthfulness, fall readily within the meaning of the term.    But the provision as to payment of premiums does not.    If not a concession by the company, it is, at least, a perfectly neutral provision as to the subject-matter of the contract.    Giving to this policy that fair and reasonable interpretation to which all contracts, including those of insurance, are entitled (Foot v. Insurance Co., 61 N. Y. 575), it seems impossible to hold that the clear provision in the body of the policy requiring payment of premiums on the 1st of the month is qualified or rendered doubtful by other portions of the instrument.

But it is said that a course of dealing had arisen which justified the deceased in making payment after the 1st of February.    The company did at the outset undoubtedly allow him to pay his premiums after the 1st of the months when they fell due.    From the inception of the policy down to June, 1893, the premium notices sent him and the receipts given him stated that the company would accept payment at any time during the month.    The notices and receipts subsequent to June, 1893, were altered so as to require payment on or before the day fixed in the policy.    The first premium after this change fell due August 1, 1893; and, though it was not paid until after the 1st, the company accepted and retained it.    The premiums due, however, on October 1st and December 1st, were paid before these dates.    Then came the premium of February, 1894, for nonpayment of which the policy was forfeited.    On these facts, the referee held that the company itself construed the policy to permit the payment of premiums at any time during the months specified, and that it was not at liberty thereafter to change such construction.

In the view we have taken, that the contract was not ambiguous as to the time for payment of premiums, much of the argument for the respondents is beside the point, and many of the cases cited inapplicable.    Where a contract is ambiguous, a party may, perhaps, be irrevocably bound by his own interpretation of it.    But, where the instrument plainly accords him a right, his waiver of it in one instance does not preclude him from thereafter insisting upon it in another.    Wyckoff v. Taylor, 13 App. Div. 240, 244, 42 N. Y. Supp. 31. The result would be the same whether or not the party was aware of the true condition of things.    The waiver of a clear contract right, whether conscious or unconscious, may estop one as to the past, but cannot constitute a binding precedent for the future.    The other party to the contract has given no consideration for the change, and may not insist upon the continuance of a mere favor.    Of course, a mutual mistake as to the terms of the agreement would be ground for its reformation; but the result outlined must follow so long as it remains in the form in which it was drawn.    Hence it is immaterial whether the company believed that the policy gave the insured the right to make payments at any time during the month, though there is the strongest evidence that it did not so believe, but was consciously extending him a favor.    In either event the company had a perfect right to insist that the premiums falling due after June, 1893, should be paid promptly on the 1st of the month.

On the other hand, the insured was undoubtedly entitled to clear

and unequivocal notice, calling distinctly to his attention the fact that for the future the company elected to stand upon its strict legal rights. Without such notice it would be estopped from holding him to the strict terms of the contract, while he still believed that the variation was in force. The notice given here was by no means so clear as it might have been. It consisted merely of an alteration in certain formal papers, which the insured could hardly be expected to read carefully from month to month. It might be our duty to hold it insufficient, as matter of law, if it did not, in fact, call the attention of the deceased to the company's change of plan. If, however, it did in fact call his attention to the change, then it answered its purpose, and he must suffer for his failure to comply. Whether this was the fact thus became a crucial question upon which the case turned. The receiver gave some quite cogent evidence to show that the insured did know of the change. This evidence consisted of the facts that the two premiums prior to February, 1894, were paid before the 1st of the months when they fell due, although from August, 1890, to December, 1892, Mr. Platt had invariably paid after the 1st, and, so far as appears, did likewise during the remainder of the period before the company's change of plan; that a similar change was made prior to February, 1894, in the case of another policy held by the insured, which resulted in a like change of conduct on his part in the payment of premiums; and that, when the company forfeited the policy, he did not claim to have been deceived, but, so far as appears, made no expostulation whatever. It is inconceivable that Mr. Platt should then have remained silent and apparently quiescent if he really believed that the company had refused his draft or check without justification. It is thus clear that this issue was seriously litigated, and error in the admission of testimony thereupon cannot well be overlooked. There was in this view of the case grave error in admitting the testimony of the respondents' witness Roberts, the agent of the deceased. He was allowed to state that he made out a check for the February, 1894, premium, expecting to send it to a local bank, but discovered that payment was required in New York. He then testifies: "Mr. Platt then said, 'We will still have time to get it there, as we have thirty days' grace anyway;' and neither of us noticed that the clause in the notice for payment of premium providing for thirty days' grace had been omitted." This was objected to as irrelevant, incompetent, and immaterial. The objection was overruled, and an exception taken. We think this evidence was clearly hearsay and incompetent for any purpose whatever. For the insured to say that he still had the 30 days' grace was tantamount to a declaration that he had no knowledge of the change made by the company. He himself might have been allowed to testify that he had not observed the change of phraseology in the company's notices, since he would thus have been stating a material fact peculiarly within his own knowledge. But it was quite erroneous to permit a third party to testify that he made the statement. The insured, if alive and examined as a witness, might have been cross-examined upon the point of his declaration, and made to explain how he reconciled his assertion with his other conduct. The receiver lost this right when another was al-

lowed to state what the insured said. The evidence was a mere declaration made by a principal to his agent, and no citation of authorities is needed to show that it was incompetent. The subsequent death of the insured in no way enlarged the respondents' rights. This testimony was their chief, if not only, evidence upon the issue in question, and the error in its reception necessitates a reversal. It should be added that the respondents were, of course, entitled to show still another waiver by the company of the provision as to payment of premiums after the position which it took in June, 1893. But the evidence shows but one permitted deviation from the requirement made, followed by two compliances, and then the forfeiture of the policy. This is quite insufficient to establish a course of dealing which would protect the respondents.

The order should be reversed, and a rehearing of the claim ordered; costs to abide the event.