(11 Misc. Rep. 658.)

## BRIDGE v. NATIONAL LIFE ASS'N.

(Supreme Court, Special Term, St. Lawrence County.  March, 1895.)

LIFE INSURANCE—FALSE STATEMENT AS TO HEALTH—EFFECT ON POLICY.
    A false statement by the insured as to the then state of his health, made while the policy was in force, under the mistaken belief that he was obliged to make a statement to reinstate the policy, does not avoid it.

Action by Helen S. Bridge against the National Life Association on a life insurance policy.    Judgment for plaintiff.

John C. Keeler, for plaintiff.
W. A. Sutherland, for defendant.

RUSSELL, J.    The defendant seeks to destroy the value of a life insurance policy payable to the widow of the deceased, Charles E. Bridge, for $2,000, because the deceased, during the pendency of the policy, and after many payments had been made on it, signed a false statement as to the then condition of his health, under the mistaken belief that he was obliged to make a statement to reinstate the policy.    The only question to be seriously considered is whether such a false statement avoids a policy regularly in force at the time it was made.    The policy was issued to the deceased on the 13th day of July, 1892.    It called for bimonthly payments.    Those payments were regularly made up to the death of the intestate, on the 5th of May, 1894.    Such payments were made by check forwarded from Canton, N. Y., to the company at Hartford, Conn., in pursuance of notices regularly made by the general manager of the defendant, which contained these two clauses: "Make all checks and post-office orders payable to the National Life Association."    "We inclose you an envelope directed to the company, which you are at liberty to use in remitting."    On the 27th day of November, 1893, the father of the deceased mailed the payment becoming due December 1st by a check on the St. Lawrence County Bank at Canton, which check included the payment due on December 1st upon a policy issued to such father.    The defendant collected the money on this check, but at what time it deposited the check does not appear.    By the natural course of mail a letter deposited in the post office at Canton would reach Hartford, Conn., as early as the second day after, so that the presumption is that

this check arrived at the office of the defendant on Wednesday, the 29th of November, 1893. Whether it was there overlooked or mislaid does not appear from the evidence. There is no proof in the case that the check was not received on or about December 1st, except so far as the statement of the deceased in signing a paper forwarded by the defendant on the 2d of December, 1893, may raise some presumption. The defendant gave no evidence that the letter was not received at its office before December 1st, nor was the envelope which might bear the stamp of the post office at Hartford, showing the date of the receipt, produced by the defendant, or its loss accounted for. Nor is there any proof that the company sent any notice to the father that his premium due the same day, and paid by the same check, was not received in time. On the 2d of December, 1893, the defendant mailed to the deceased a notice that the premium due the 1st day of December was not received until after that date. Such notice was sent by the general manager, with the view before him of the date of the check and of the letter inclosing it, if we may presume that one was written, and the postmark upon the envelope as to the time of actual receipt. The statement is upon a printed form, headed at the office of the National Life Association, and the notice says that the premium was not received "here" until after December 1st. Upon receipt of that notice, the deceased, under date of the 5th of December, 1893, signed a printed form, warranting his soundness of health and freedom from disease, and returned it to the general manager of the defendant. The statements in that printed form, signed by the deceased, were false in fact. Whether the deceased knew that the hemorrhage was from his lungs makes no difference in law. He was not in sound health, and at that time was suffering under a disease which a few months later caused his death. The proof shows that the body of the check was filled out by the deceased, and was then signed by the father, who took it and mailed it. There is no evidence that the father, however, communicated the time of the mailing to the son, so that it is possible the deceased may have supposed the check to have been delayed in sending. However this may be, it is clear that the deceased supposed that his check did not reach Hartford until the day after it was due,— a fact of which he could have no knowledge except from the statement of the defendant. Acting under this mistaken belief, or under the mistaken supposition that his payment was not good, even though timely made, if it was not received and actually taken from the envelope on or before the 1st day of December, the deceased made the statement which he was under no legal obligation whatever to make. It was, therefore, so far as the relations of the parties are concerned, the same as if midway between payments the defendant had required the deceased to certify that he was in sound health, under the assertion that it would not recognize the obligation of the policy unless he did. The statement so made on the part of the deceased was gratuitous, and of no legal or binding force. I can readily see why a statement made by an assured, either under a fire or a life policy, bearing materially upon the

risk, should be valid as a defense if it were false, where there is a reserved right on the part of the company to alter its relations with the deceased. If a company has the power to cancel, or the power to terminate by notice, or the right to require statements, by the contract between the parties, then the assertion that it will exercise that power is a sufficient consideration to justify a reliance upon a statement affecting the value of the risk voluntarily made by the assured. Such a statement leads the insurance company, presumptively, to a different course of action than it might otherwise take. It suspends its power of revocation, whether it had actually taken any action towards the cancellation or not. But where the relations of the parties, as in a life insurance policy, consist on the one part of an obligation to pay the premiums demanded, and on the other side to continue the risk of insuring the life which is daily growing more hazardous as life advances in age, those relations may not be terminated by either party, as against the other party, by the exercise of any option, except for the one cause of failure to perform. In the case at bar the deceased had up to the 1st day of December to mail that check. Primeau v. Association, 77 Hun, 418, 28 N. Y. Supp. 794, affirmed 144 N. Y. 716, 33 N. E. 858. If mailed the latter part of the day on December 1st, it could not have been received by the defendant in time to write the letter of December 2d, sending the notice of nonpayment, and the alleged contract for reinstatement. Assuming, therefore, that the writer of that letter, acting for the defendant, was proceeding in entire good faith, he was also mistaken in supposing that he had a right to cancel a contract for the nonpayment of a premium legally made on the 1st of December, if not before; and, doubtless, if he supposed, from the delay in opening the letter in the home office of two or three days, that it had not been actually mailed prior to December 1st, still in sending such a letter as he did to the deceased he was mistaken in the law in exacting the requirement of a new warranty, and therefore did what he otherwise would not have done. Judgment goes for the plaintiff for the amount due upon the policy, which, after deducting the amounts chargeable for certain liens provided for by the policy, is $1,850, with interest from August 23, 1894, with costs to the plaintiff. Ordered accordingly.