BOPPLE et al. v. SUPREME TENT OF KNIGHTS OF MACCABEES OF THE WORLD.

(Supreme Court, Appellate Division, Fourth Department. June 12, 1897.)

1. WITNESSES—TRANSACTIONS WITH DECEDENTS—INTEREST IN ACTION.
    The officer of a mutual benefit association who is charged with the duty of receiving dues is not, because of his liability to assessment as a member for death benefits, "interested in the event" of an action against the association for death benefits, and therefore he is not disqualified by Code Civ. Proc. § 829, from testifying that the deceased member had not paid his dues, so as to keep his certificate of membership in force.

2. INSURANCE—FRATERNAL SOCIETIES—FORFEITURE.
    Laws 1892, c. 690, § 233 (contained in article 7, relating to fraternal societies), provides that such societies "shall be subject only to the provisions of this article, and such provisions of article 1 as may be specially applicable thereto." The provision of the chapter in respect to forfeiture of life policies for nonpayment of premiums unless notice of the assessments is given is contained in the article which relates to life, health, and casualty insurance corporations. Held, that proof of notice of assessments is not necessary to establish the forfeiture of membership in a fraternal society for nonpayment of the assessments.

3. SAME—ACTION FOR BENEFIT—APPLICATION AS EVIDENCE.
    In an action for the death benefit under a certificate of membership, which provided that no rights should accrue under it if it was obtained by any misrepresentation as to the member's occupation, etc., the defense was that such misrepresentation had been made. Held, that the application for membership containing statements made by the member as to his occupation was admissible in evidence, though it was not referred to in the certificate, and made part of the contract.

Appeal from trial term.

Action by Sebastian Bopple and others, infants, by Sebastian Bopple, their guardian ad litem, against the Supreme Tent of the Knights of Maccabees of the World. From a judgment entered on a verdict directed by the court in favor of plaintiffs, and from an order deny-

ing a motion for a new trial, made on the minutes, defendant ap--
peals.  Reversed.

Argued before HARDIN, P. J., and FOLLETT, GREEN, and.
WARD, JJ..

Daniel J. Kenefick, for appellant.
John Gillette, for respondents.

FOLLETT, J.  This action was begun May 9, 1894, to recover
$1,000, alleged to be due on the following certificate, issued by the
defendant, an assessment beneficiary society, organized under the
statutes of the state of Michigan, and authorized to transact busi-
ness in this state:

"Supreme Tent K. O. T. M. of the World.

"No. 19,752.                                                                              $1,000.

"This certifies that Sir Knight Philip Schaurer has been regularly admitted
as a member of Bristol Springs Tent No. 197, located at Bristol Springs, state·
of New York, and that in accordance with, and under the provisions of, the·
laws of the order, he is entitled to all rights, benefits, and privileges of mem-
bership therein, and that at his death one assessment on the membership, not·
exceeding in amount the sum of one thousand dollars, will be paid as a benefit
to Peter, Nicholas, and Peter Schaurer, and Mary Roos and Julia Bopple,
bearing relationship to him of father, brothers, and sisters, upon satisfactory
proof of his death, together with the surrender of this certificate, provided he
shall have in every particular complied with the laws of the order now in
force, or that may hereafter be adopted, and has not obtained his membership
by fraud or misrepresentation as to his age, physical condition, or occupation
when admitted to membership.

"In testimony whereof, the supreme tent has caused the supreme commander
"[Seal of        and supreme record keeper to attest and affix hereto the seal
Supreme        of the Supreme Tent of the Knights of the Maccabees of the
Tent.]           World, this 10th day of July, 1893.

"N. S. Boynton, Sup. R. K.

"D. P. Markey, Sup. Com.

"Countersigned, sealed, and delivered by the sir knight commander and sir
"[Seal of        knight record keeper of Bristol Springs Tent, No. 197, Knights
Bristol          of the Maccabees of the World, this 28th day of July, 1893.
Springs
Tent. 197.]

"John M. Miller, Sir Kt. R. K.

"Elmer N. Coye, Sir Kt. Com."

January 20, 1894, Philip Schaurer died, and subsequently the de-
fendant waived the provision in the certificate that satisfactory proof·
of his death should be furnished.  It is alleged in the complaint
that Philip Schaurer "made application in the usual and required
form to join said Tent No. 197 of said defendant, and for insurance
on his life to the amount of $1,000"; that he paid the sums re-
quired for admission, and "the acceptance of which [the sums], and
of his application, constituted him a member, entitled to the in-
surance benefits to said amount of $1,000"; and "that by said ap-
plication and the acceptance thereof, and by the issuing of the said
certificate, marked 'A,' the life of the said Philip Schaurer became
and was insured."  Among other defenses alleged in the answer
are the following:  (1) That, when the certificate was issued, the
insured was engaged in the manufacture of wine, in violation of
section 142 of the defendant's constitution, which fact was not stated·

in the application on which the certificate was issued, but was fraudulently suppressed, and that, after the certificate was issued, the insured engaged in the same occupation; (2) that Philip Schauer failed to pay his dues and assessments, and was not a member of the association at the time of his death.

By section 172 of the constitution of the defendant, a definite sum is payable monthly by every member (45 cents in the case of Schauer), in order to keep certificates in force, which sums, by section 182, are due on the 1st day of every month, and must be paid within 30 days thereafter. In addition to these stipulated monthly payments, the constitution provides that assessments may be made when necessary for the purpose of paying death claims, and, in case monthly dues and assessments are not paid, the defaulting member shall stand suspended from all the rights and benefits of a member. The defendant, to establish its defense of a nonpayment of the monthly dues by Schauer, called the finance keeper of Tent 197, at Bristol Springs, and offered to prove by him that the insured failed to pay the monthly payments due on the 1st days of September, October, November, and December, 1893, and on the 1st day of January, 1894. It appeared that the witness was a member of the order, holding a certificate therein, and would be liable to be assessed to pay the plaintiffs' claim. The plaintiffs objected to his testifying, on the ground that he was disqualified by section 829 of the Code of Civil Procedure, and that evidence of nonpayment of assessments was incompetent until it was first shown that notices of the assessments had been given, as required by chapter 341 of the Laws of 1876, as amended by chapter 321 of the Laws of 1877. The objections were sustained, and the defendant excepted.

The witness was not a party plaintiff or defendant to the action, nor did either party to the action derive his interest in the subject-matter thereof from or through him, but it is argued that the witness was "interested in the event" within the section. The term last quoted means having a direct legal interest in the event of an action, as distinguished from an interest in consequences which may or may not flow from the event of the action. For whichever litigant the final judgment in this action may be given, it will not charge the witness with or exempt him from a legal liability. The fact that a judgment against the defendant may cause an assessment of the witness and other members of the order does not make him interested in the event of the action, within the meaning of the section. Every taxpayer of a municipality is indirectly interested in the event of actions by or against it, but a taxpayer, by reason of such indirect interest, is not disqualified from testifying to personal transactions with a decedent, though the result of the action may increase or decrease his rate of taxation. Pack v. Mayor, etc., 3 N. Y. 489. The interest which disqualifies is a direct legal interest in the event of the action in which the witness is called to testify, and the fact that the secondary or remote effect of the judgment may indirectly affect the pecuniary interest of the witness does not disqualify him. The defendant is not a stock corporation, in which the witness is a shareholder; and the case does not fall

within the rule laid down in Keller v. Manufacturing Co., 39 Hun, 348, and in George H. Kitchen & Co. v. Taylor, 14 N. Y. St. Rep. 398. The creditor of a deceased debtor is not disqualified from testifying to personal transactions with the debtor in an action between his representative and a third person, because the judgment will increase or decrease the assets of the estate, and thereby imperil or render more certain the payment of his claim.

Under section 399 of the old Code, it was held that shareholders in banks were competent to testify to personal transactions with the decedent in actions between the representative of the decedent and banks. Bank v. Marsh, 7 N. Y. 481; Bank v. Palmer, 2 Sandf. 686. The last clause of section 829, which provides, "A person shall not be deemed interested for the purposes of this section by reason of being a stockholder or officer of any banking corporation which is a party to the action or proceeding, or interested in the event thereof," was added by chapter 703 of the Laws of 1881, to conform the section to the cases of which those last cited are types, and it was not intended by the amendment to render all persons interested in all corporations other than banks incompetent to testify to personal transactions with decedents in actions between corporations and representatives of decedents. The purpose of the addition was not to restrict, but to settle, the question in respect to the competency of shareholders of banks in accordance with the decisions. The rule contended for by the learned counsel for the plaintiffs would exclude the officers and employés of mutual life or fire insurance companies, holding policies, from testifying in any action between the representatives of a deceased policy holder and such corporation or association. No such comprehensive exclusion of classes of persons from testifying to personal transactions with decedents was intended by or should be given to the section. A judgment for or against a savings bank indirectly affects the depositors therein, but it would hardly be contended that a depositor would not be competent to testify to a personal transaction with a decedent by reason of such interest. The theory of the section is to render incompetent as witnesses against the representative of a decedent, as to personal transactions with decedent, parties to the action, persons from or through whom title to the subject-matter of the action is derived, and persons for whose benefit the action is prosecuted or defended,—persons directly interested in the event of the action, and no others. Again, when an objection is made that a witness is incompetent to testify, the burden is upon the objector to show such incompetency. Cary. v. White, 59 N. Y. 339; Edington v. Insurance Co., 77 N. Y. 571; People v. Schuyler, 43 Hun, 88, affirmed 106 N. Y. 298, 12 N. E. 783. It was not shown that the knowledge of the witness in respect to the nonpayment of the monthly dues and assessments arose out of personal transactions with the decedent. Indeed, the defendant sought to show that neither Schaurer, nor any one in his behalf, had paid the monthly dues.

The second objection, that it was incompetent to show the nonpayment of assessments without first showing that notices of the assessments had been given, as required by chapter 341 of the Laws

of 1876, as amended by chapter 321 of the Laws of 1877, is not tenable. These statutes were repealed by chapter 690 of the Laws of 1892, previous to the issuing of the certificate in this case, and the provision in respect to the nonforfeiture of life policies for non-payment of premiums, unless notice is given of the time when payable, was incorporated into section 92 of chapter 690, which section relates to policies issued by life, health, and casualty insurance corporations, and does not relate to certificates issued by fraternal societies. Article 7 of this chapter relates to fraternal beneficiary societies, of which article section 233 is a part, and it provides that such societies organized under the laws of this or of other states are exempt "from the provisions of the other insurance laws of the state, and shall be subject only to the provisions of this article and such provisions of article one of this chapter as may be specially applicable thereto." It is unnecessary to discuss the asserted conflict between Ronald v. Association, 132 N. Y. 378, 30 N. E. 739, and Elmer v. Association (Sup.) 19 N. Y. Supp. 289, affirmed 138 N. Y. 642, 34 N. E. 512, because the statute above cited has set this question at rest. I think the court erred in refusing to permit the officer of the defendant, whose duty it was to collect the monthly dues, to testify that the monthly sums due from Schaurer were not paid.

As before stated, it is alleged in the complaint that the certificate upon which the action was brought was issued upon an application made by Schaurer, and accepted by the defendant. The effect of the allegation is that the application and certificate constituted the contract. The defendant offered this application in evidence, the execution of which was admitted, which was objected to by the plaintiffs, upon the ground that the certificate did not refer to the application, and make it part of the contract. The objection was sustained, and the defendant excepted. The certificate provides that a member who has "obtained his membership by fraud or misrepresentation as to his age, physical condition, or occupation when admitted to membership" shall not be entitled to recover. One of the defenses interposed was that Schaurer, when he joined the society, was engaged in a prohibited occupation, which fact he concealed from the defendant. The rejection of the application was error.

The judgment and order should be reversed, and a new trial granted, with costs to abide the event. All concur.