(39 App. Div. 276.)

KENYON v. NATIONAL LIFE ASS'N OF HARTFORD.

(Supreme Court, Appellate Division, Fourth Department. March 22, 1899.)

1. INSURANCE—PREMIUMS—FORFEITURE FOR NONPAYMENT—VALIDITY.

Defendant issued a life policy to plaintiff's decedent, obligating assured to pay bimonthly premiums, at its home office, on or before noon of the first of each alternate month, and provided that failure to make payments as required should work a forfeiture of the policy and of moneys paid; that, if assured received no notice of the amount of any premium, an amount equal to the last premium should be paid; and directed assured to make all checks and post-office orders payable to the company. During 18 months after the policy was delivered, assured paid premiums by check, post-office order, or registered letter, sent through the mails, which insurer received without objection. Prior to August 1, 1895, defendant sent assured notice of the premium due on that day, with a directed envelope, which it requested should be used in making remittances, and also a notice that insurer was not responsible for loss or delay of the mails, and that the premium must reach the home office on or before the required date in order to prevent a lapse of the policy. Assured sent the premium by registered mail on July 30th, which arrived at the post office of insurer's home office on the morning of August 1st, but the company did not receive it until the 2d, when it received and retained the premium, but declared

the policy lapsed for nonpayment within the time, and so notified assured. *Held*, that the payment was in compliance with the contract as interpreted by the parties by their course of dealing from its inception, and that the forfeiture and cancellation of the policy was illegal and void.

**2. SAME—ACTION BY BENEFICIARY—DEFENSES.**

An insurer, after having illegally canceled a policy and notified assured that it had lapsed it, cannot urge, as a defense to a subsequent action thereon after assured's death, that she assented thereto, by failing to promptly protest against its action and bring suit to reinstate the policy.

**3. SAME—SUBSEQUENT PREMIUMS—NECESSITY OF TENDER.**

Where a policy has been illegally lapsed by an insurer, it is not incumbent on assured to tender subsequent premiums according to the terms of the policy, which were uncertain in amount and to be fixed by the insurer, of which she was given no notice, in order to preserve her rights under the policy, notwithstanding it provided that, in case of failure to receive notice, she should pay the amount of the last premium, since such clause should be construed to relate to a case of accident or mistake only.

**4. SAME—ELECTION OF REMEDIES.**

Where a policy was illegally lapsed by an insurer, assured may sue in equity to have it continued, or he may elect to consider it at an end and recover its just value, or wait until it becomes payable according to its terms, and then try the question of forfeiture.

Hardin, P. J., dissenting.

Appeal from special term, Orleans county.

Action by Samuel Kenyon against the National Life Association of Hartford, Conn. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

The action was brought to revive or reinstate a policy of life insurance (claimed by the defendant to have lapsed), and to compel defendant to accept payment of premiums, and to recover the amount of the policy, less certain premiums. The principal defense was that the insured, Frances A. Kenyon, failed to pay on its due day a premium which fell due on her policy August 1, 1895, of $11.76. The defense insisted that the policy lapsed, and that the lapse was never waived. Defendant is a foreign corporation, existing under the laws of the state of Connecticut, carrying on the business of life insurance at Hartford, Conn., its principal office, and elsewhere. On the 23d of January, 1894, it issued its policy to Frances A. Kenyon, of Medina, upon her life. In the policy was the following provision: "And in consideration of the further payment at the home office at Hartford, Connecticut, on or before twelve o'clock noon, on the first week days of the months of February, April, June, August, October, and December of each year during the continuance of this contract, of a premium for such an amount as the association may deem requisite for the prompt payment of all losses. * * * It is understood and agreed that a failure to make any payment specified in said policy on or before the day due (except as hereinafter specified) shall work a forfeiture of this policy, and all moneys paid on the same shall be forfeited to the association for the benefit of the persisting members." One of the conditions mentioned in the policy was as follows: "Notices given to the member while any payment that has fallen due herein shall be unpaid are to be understood only as notices to reinstate membership, and shall not be held to extend maturity of such unpaid payments, nor as waiving proof that the member is alive and in good health; proof of which, to the satisfaction of the association, shall be tendered with all payments for reinstatement, when the policy may be reinstated, at the option of the association. Notice that a premium is payable to the association at Hartford, Conn., on or before twelve o'clock at noon on the first week days of each of said months of each and every year, is given in the policy and accepted, and any further or other notice is expressly waived. And, in the event that the holder of this policy does not receive a notice of the amount of premium which will be due on the days

specified herein, an amount equal to the last premium shall be paid to the association on or before the day due, as a condition precedent to the continuance of the policy in force."

The trial judge found that on the 23d of January, 1894, the contract of insurance "had its inception by the delivery thereof to the said Frances A. Kenyon in an envelope through the post office, from the defendant, of the said policy, and receipts for the sum of $11.24, the amount of the first required premium, together with a notice, of which the following is a copy of the material portions thereof: 'Mrs. Frances A. Kenyon, Box 601, Medina, N. Y.: O. H. Blanchard, Pres.; D. S. Fletcher, Gen'l Manager; E. E. Smith, Treasurer,—National Life Association, Hartford, Fire Insurance Company Bldg., No. 53 Trumbill St., Hartford, Conn. January 23, 1894. P. O. drawer 57. The first premium on your policy No. 30,496, $9.24, is now due and payable at this office. * * * Make all checks and post-office orders payable to the National Life Association. Please inclose this notice with your remittance, and it will be stamped "Paid," and returned to you. H. T. Braman, Secretary.'" The trial court also found, viz.: "That, under and by the terms of said policy, a premium thereon was due and payable at the home office of the defendant in Hartford, Conn., on the first week day of August, 1895, said first week day being also the first day of said month of August, 1895. That on the 30th day of June, 1895, the defendant, by its secretary, Frederic H. Calkins, served upon the said Frances A. Kenyon, by depositing the same in the general post office in the city of Hartford, Conn., inclosed in a prepaid sealed envelope addressed to the said Frances A. Kenyon, at box 601, Medina, N. Y.,—being the last address upon the books of the said defendant given by the said Frances A. Kenyon as the place where notices relating to the said policy should be sent,—a notice, a copy of which is stated fully in the findings. The notice was to the effect that the bimonthly premium of $11.76 would be due and payable on or before 12 o'clock noon on the 1st day of August, 1895. Written across the margin of the notice were the words: 'Notice. This premium is payable at the office in Hartford, Conn., on or before 12 o'clock at noon of the 1st day of August, 1895.' Accompanying the notice signed by Braman, secretary, was also a notice signed by Fletcher, president, in which was found the following words: 'We inclose you an envelope addressed to the company, for your convenience, in case you remit by mail. But it must be distinctly understood that the association is not and cannot be responsible for any loss or delays of the mails. Mailing of the amount of premium is not payment. It must reach the home office on or before the date due in order to prevent the policy from lapsing. Pay early. Don't wait until the last day. It will save both yourself and the company trouble and expense.'" The trial court also found, viz.: "That the said notice was duly received by the said Frances A. Kenyon. At the time the policy was issued she resided at Medina, a distance of about 530 miles from Hartford, by way of New York. There is a communication between the two places by rail,—by railway trains leaving several times each day from Medina. It usually takes from 17 to 18 hours for a letter to reach Hartford after leaving Medina. It is found as a fact that Mrs. Kenyon regularly paid her premiums of $11.76 each two months to the defendant, by sending the same by mail from Medina to the defendant at Hartford, until the premium which became due August 1, 1895. The amount of that premium, $11.76, she caused to be sent to the defendant by mail by depositing the money in the post office at Medina, N. Y., on the 30th day of July, 1895, in a registered letter, and directed National Life Association, Hartford, Conn., and paid the postage and registry fee thereon. That it arrived at the Hartford post office not later than the morning of August 1, 1895, and in time to have been received by defendant before noon of that day. That the defendant did not take or receive the same from the post office at Hartford, Conn., until August 2, 1895." The court also found: "That the defendant received said registered letter from the post office at Hartford on the 2d day of August, 1895, with inclosure of $11.76, and at the same time a receipt was signed by the defendant for said letter, and that at the time of signing said receipt defendant well knew that said registered letter contained the money to pay said premium, and, after signing and delivering said receipt to the postmaster at Hartford, the defendant took said registered letter and money

away to its place of business, and has all the time since retained, and still retains, said premium money of $11.76." The court also found: "That, soon after the receipt of said premium money as aforesaid, the defendant notified the said Frances A. Kenyon that, because the premium had not been received by it until after August 1st, her policy had lapsed, and had been canceled upon its books, and had become forfeited, and refused and neglected to notify said Frances Kenyon of the falling due of any further premiums or assessments under said policy, and claimed, and still claims, that said policy is not now, nor has been at any time since August 1, 1895, in force, but that it is absolutely void, and said Frances A. Kenyon failed and omitted to pay any of the premiums that fell due upon said policy after the said 1st day of August, 1895." It is found as a fact that on the 19th day of January, 1897, Frances A. Kenyon died, leaving a last will, which was admitted to probate in the surrogate's court of Orleans county, and that the plaintiff at the time of the commencement of this action was, and now is, the owner of all interest which said Frances A. Kenyon, or any other person, had in said policy of insurance at the time of her death, or at any time afterwards. It was also found that no proof was offered or made upon the trial that proofs of the death of said Frances A. Kenyon had been given or furnished the defendant. The trial court also found: "That there is no evidence that the said Frances A. Kenyon, after receiving notice from the defendant that her policy was lapsed and forfeited, ever gave any notice to the defendant that she refused to recognize said lapse, or that she made any claim under said policy." And the court further found: "There is no evidence that the said Frances A. Kenyon ever tendered or offered to pay any one of the premiums which (if said policy were not lapsed) would have fallen due thereon from August 1, 1895, to the day of her death, January 19, 1897. There is no evidence that Frances A. Kenyon ever demanded back the $11.76 which was mailed in her behalf to the defendant, July 30, 1895, for the purpose of paying the premium which fell due August 1, 1895. There is no evidence that the defendant ever declined or refused to pay back said $11.76 (mailed to it in behalf of Frances A. Kenyon, July 30, 1895, as before found) to Frances A. Kenyon." The trial court found that the deposit of the $11.76 in money in a registered letter at Medina, and directed to the defendant, "and the receipt and retention of said money by it, was a payment of the premium to the defendant due August 1, 1895." Also "that the receipt of said money on August 2, 1895, and continued retention thereof by defendant to the present time, was a waiver by it of the forfeiture of the policy, if any occurred by reason of its nonpayment on August 1, 1895." Also that, by giving notice to said Frances A. Kenyon that the said policy was lapsed and had been canceled upon its books and become forfeited, and by its claim that said policy was void, "it waived payment of future premiums and service of proofs of death"; and that the plaintiff was entitled to recover the $2,000, less the unpaid balance of deferred premiums and the amount of all unpaid premiums, to wit, a balance of $1,391, besides interest. Exceptions were filed to the conclusions of the trial court.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Filkins & Coe, for appellant.
Edwin D. Worcester, for respondent.

McLENNAN, J. Two questions are presented by this appeal: First. Did the rights of the plaintiff and of the insured, under the policy in question, cease and terminate because of the failure of the insured to pay the bimonthly premium at the home office of the defendant before 12 o'clock noon of the 1st day of August, 1895, and because the defendant immediately thereafter notified the insured that for that reason said policy was forfeited and had been declared void by it? Second. If the policy was not forfeited by reason of such failure to pay, and the declaration of forfeiture by the defend-

ant was illegal and void, is the plaintiff precluded from recovering in this action because the insured did not protest against such illegal action, or commence an action to enforce her rights under said policy during her lifetime or for a period of 15 months, or because of the fact that she did not pay, or offer to pay, any of the bimonthly premiums which became due after such declaration of forfeiture by the defendant?

The facts are not in dispute. The defendant is a foreign corporation, engaged in the life insurance business, so called, having its home office or principal place of business at the city of Hartford, Conn. On the 23d day of January, 1894, the defendant issued the policy of insurance in question, which purported to insure the life of one Frances A. Kenyon, who resided at the village of Medina, in the state of New York, a distance from the home office of the defendant of more than 500 miles. The policy issued by the defendant is voluminous, covering several pages of printed matter, if put in ordinary type, and attached to it are several other pages denominated "Conditions," which by the terms of the policy are made a part of it. So far as it is important to note, the policy provided, in substance, that in consideration of the advance payment by the insured, "and of the further payment at the home office at Hartford, Connecticut, on or before twelve o'clock noon, on the first week day of the months of February, April, June, August, October, and December of each year during the continuance of this contract, of a premium for such an amount as the association may deem requisite for the prompt payment of all losses in the department in which this policy is issued, and for the proper maintenance of the contract in such department, including an amount for expenses as hereinafter provided," such premiums to be levied upon the policies in the department according, etc., "the National Life Association of Hartford, Connecticut, issues this policy to Frances A. Kenyon, of Medina, New York," and agrees "that, within ninety days after proof satisfactory to the association shall have been received at its office in Hartford, Connecticut, of the death of said insured while this policy is in force, all the conditions having been complied with, there shall be due and payable, solely from the funds accumulated from the payments of its insured in this department, the sum of $2,000, less," etc., "to herself or legal representatives. * * *" It is further provided as follows:

"Forfeitures. It is understood and agreed that a failure to make any payments specified in said policy, on or before the day due (except as hereinafter specified), shall work a forfeiture of this policy, and all moneys paid on the same shall be forfeited to the association for the benefit of the persisting members."

One of the "conditions," so called, which is made a part of the policy by its terms, is as follows:

"Notice that a premium is payable to the association at Hartford, Connecticut, on or before twelve o'clock at noon on the first week day of each of said months of each and every year, is given in the policy and accepted, and any other or further notice is expressly waived. And, in the event that the holder of this policy does not receive a notice of the amount of premium which will be due on the days specified therein, an amount equal to the last premium

shall be paid to the association on or before the day due, as a condition precedent to the continuance of the policy in force."

If only the letter of the contract is considered, it will be seen that, for all practical purposes, the insured agreed to pay such sum every two months during her life, as the defendant might demand, and that her representatives, upon her death, would accept such sum as it might see fit to pay. Assuming, however, that it was intended by the contract to express some measure of honesty and equity, the insured was only required to pay bimonthly such sum as was "required for. the prompt payment of all losses in the department in which this policy is issued, and for the proper maintenance of the contracts in said department, including an amount for expenses as hereinafter provided"; and, upon making such payment of said amounts, her heirs or representatives at her death were entitled to receive $2,000, if the association had sufficient funds on hand accumulated for that purpose solely from the payments of its insured. The policy had its inception on the 23d day of January, 1894, when it was delivered to the insured by the defendant by mail, addressed to her at Medina, N. Y. It. was accompanied by a notice, signed by the defendant, which stated, among other things, that the amount of the first premium on the policy was $9.24, and then follows:

"Make all checks and post-office orders payable to the National Life Association. Please inclose this notice with your remittance, and it will be stamped 'Paid,' and returned to you. This payment will carry your policy until the 1st day of April, 1894, and the insurance will be in force as soon as the payment is received. We inclose an envelope addressed to the company, which please use in sending remittances."

The insured sent the amount of such first premium, $9.24, to the defendant by mail in the envelope furnished by it, by depositing the same in the post office at Medina, N. Y. Such payment was accepted by the defendant, and the notice was marked "Paid," and returned to the insured. The premiums which became due upon said policy in April, June, August, October, and December, 1894, and in February, April, and June, 1895, were paid by the insured in substantially the same way, either by check, post-office order, or registered letter, but always by mail; the letters being deposited in· the post office at Medina, N. Y., and directed to the defendant at Hartford, Conn., and always in pursuance of a notice which ·stated the amount of such premium. On the 29th day of June, 1895, the defendant sent a notice by mail to the insured, which stated, among other things:

"The bimonthly premium of $11.76 on your policy No. 30,496 will be due and payable at this office on or before twelve o'clock at noon on the 1st day of August, 1895. This is your pro rata share of the expenses and of the funds necessary to meet the death claims accrued, and to furnish the necessary reserve, under the policy, and to carry your insurance to twelve o'clock at noon of October 1st, 1895."

In a postscript to the notice was added the following:

"Important. We call special attention to the conditions of your policy, which require that the payments must be made at Hartford on or before the day due, in default of which your policy will lapse according to its terms, and all payments heretofore made thereon will be forfeited. * * * We inclose

you an envelope directed to the company for your convenience, in case you remit by mail, but it must be distinctly understood that the association is not or cannot be responsible for any losses or delays of the mails. Mailing the amount of the premium is not payment. It must reach the home office on or before the day due, in order to prevent the policy from lapsing."

On the 30th day of July, 1895, the insured sent a registered letter to the defendant, addressed to it at Hartford, Conn., inclosing the amount of the premium in question, to wit, $11.76, which, by the terms of the policy and of said notice, became due and payable on said 1st day of August, 1895, before 12 o'clock noon of that day, at the home office of the defendant. The letter was deposited in the post office at Medina, N. Y., in the ordinary way; and the learned trial justice found, which finding is supported by evidence, that such letter was received at the post office at Hartford, Conn., on the morning of the 1st day of August, 1895. The evidence was uncontradicted that, in the ordinary conduct of the mails, such letter would have arrived at its destination at that time. The defendant did not call for the letter, or, at least, did not receive it, as was conceded upon the trial, until the 2d day of August, 1895, when it receipted for the letter at the post office, and took it, and the money which it contained, to its home office. The defendant kept the money, and still retains it, and has never offered to return the same to the insured or to any one on her behalf.

As appears by the allegations of the complaint and answer, the defendant, immediately after said 2d day of August, 1895, and after receiving such registered letter, and the money which it contained, assumed to declare that the policy in question had lapsed, and assumed to cancel the same for the reason, and upon the sole ground, that the premium in question had not been paid to it at its home office in Hartford, Conn., on or before 12 o'clock noon of the 1st day of August, 1895, and so notified the insured, and in substance stated to her that all her rights under said policy, by reason of such nonpayment of premium by her, had become forfeited. Thereafter the defendant failed and neglected to mail to the insured any further notice of premiums subsequently falling due, and did not have any further or other communication with her in regard to the policy in question or her rights thereunder. The learned trial justice found that the payment of premium, made by the insured in the manner above stated, was in compliance with the contract as it existed between the parties at the time such payment was made, and as it had been interpreted by them by the course of dealing between them from the inception of the contract. Such conclusion was amply supported by the evidence.

By the terms of the policy, the insured agreed to pay the bimonthly premiums which should become due and payable thereon at the home office of the defendant, but, if only the residence of the parties and the amount of the premiums required to be paid each two months are considered, the conclusion is irresistible that it was the intention of the parties to the contract that such payment of premiums should be made by mail. When the policy was issued, the insured resided more than 500 miles distant from the home office of the defendant. The amount of the premium which was to become due each two months was but a few dollars, and it would be unreasonable to suppose

or hold that either party to the contract understood or intended that such payment should be made otherwise than by mail.

In addition, the evidence discloses that when the policy was delivered to the insured there was a statement accompanying it, signed by the defendant, which practically informed the insured that the payment of the first premium, and those which should thereafter become due, were expected to be made by mail; an envelope directed to the company was delivered to the insured with the policy, which she was asked to "please use in sending remittances"; and for more than a year after such first payment the insured invariably sent the bimonthly premiums upon the policy to the defendant by mail, in envelopes furnished by and directed to it, which payments were accepted by the defendant, and without complaint that the same were not made in accordance with the terms of the contract as it was understood by the parties. Under those circumstances, the insured had a right to believe that the amount of the premium deposited by her on the 30th day of July, 1895, in the post office at Medina, N. Y., would be received by the defendant. She certainly had a right to believe that when the letter containing such premium was mailed in such time that it actually reached its destination in time to have been received by the defendant, in the ordinary course of business, before the expiration of the time in which such payment could be made under the terms of the policy, it would be accepted.

In view of the course of dealing which had existed between the insured and the defendant for more than a year in respect to the payment of premiums, the defendant had no right, either through neglect or carelessness or for any other reason, to omit to take the letter from the post office at Hartford, which was there before the expiration of the time in which such payment might be made, waiting for it, and then assume to declare the policy of the insured forfeited because such payment had not been made at its office. Under the most favorable view of this part of the transaction on the part of the defendant, it is evident that it was not actuated by a desire to deal honestly and fairly by the insured, but, on the contrary, that it was seeking for a pretext by which it could avoid all liability under the policy issued by it, and retain the premiums which for more than a year had been paid each two months by the insured.

The defendant admits that it received the money sent to it by the insured, and put it into its drawer in its home office (where it has since remained, if not used for other purposes), but claims that it did so a few hours after the fatal hour of 12 o'clock noon, and that, therefore, the insured ceased from that moment to have any rights under such policy, and that it (the defendant) had a right to retain for its own use all sums which the insured had paid to it under the supposition that her life was really insured. We think that the scheme of the defendant, as outlined by its claim upon the trial, should not be permitted to succeed, unless, under the law of this state, it is impossible to prevent it.

In the case of People v. Insurance Co., 21 App. Div. 533, 48 N. Y. Supp. 389, the facts are stated in the headnote as follows:

"One of the provisions of a policy of life insurance required the payment of the premiums bimonthly, upon the 'first days' of certain months, and another provision declared that the premiums were payable 'during' those months; and the company, from August, 1890 (the time when the first premium payable after the issuing of the policy fell due), until and including June, 1893, sent notices stating that the premium was due on the 1st day of the month specified, and that unless the premium was paid before the 1st of the next month the policy would be forfeited. The receipts for the premiums, including that of June, 1893, stated that the premiums must be paid upon the day when due, 'or within the thirty days grace allowed'; but after that date the provision as to grace was omitted from the receipt, although it was identical in every other respect, and the notices thereafter issued required payment on the 1st day of the month. The October and December, 1893, premiums were each paid before the 1st of those months, but the February, 1894, premium was not mailed by the insured until January 29, 1894, and was not received by the company until February 5, 1894."

At page 536, 21 App. Div., and page 391, 48 N. Y. Supp., the court say:

"It is apparent from the foregoing statement of facts that in all of its dealings with Platt, the assured, prior to September, 1893, the insurance company placed its own construction upon the requirements of the policy respecting the payment of premiums, not only by its course of business in accepting premiums during the month, upon the 1st day of which they were technically due and payable, but by its express notices to the assured informed him that he had 30 days after the 1st day of the month in which to pay each of the premiums necessary to keep the policy alive. To this so-called grace the assured was entitled, by the terms of his policy, under the construction given to it by the company itself. That such construction, given by the company to this contract, will be that adopted by the court, has been held. Dodge v. Zimmer, 110 N. Y. 48, 17 N. E. 399; Dutcher v. Insurance Co., 3 Dill. 97, Fed. Cas. No. 4,202; Reynolds v. Insurance Co., 47 N. Y. 597; McMullen v. Hopper, 15 App. Div. 369, 44 N. Y. Supp. 63. The terms of the contract cannot be changed by the simple act of the company itself. It had no right to do so in the manner in which it sought to accomplish that end. The omission of the 30 days' margin of time from the printed indorsement on the receipts and from the notices cannot operate to make a new contract with the assured, nor can it be claimed that he acquiesced in a change of the contract simply because he paid some of the later premiums before the 1st day of the month on which they became due. That was a right he had under the original policy, and the mere fact that he availed himself of it in later instances is not to be construed as an assent on his part to a modification of the contract."

In the case of Kenyon v. Association, 122 N. Y. 247, 25 N. E. 299, the headnote is as follows:

"Any agreement, declaration, or course of action on the part of the company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture, though it might be claimed under the express letter of the contract."

In that case the certificate provided that, if any assessment was not paid within 10 days after proper notice, the certificate should cease and determine. There was indorsed upon it a by-law which provided that any member failing to pay his assessment within 10 days after notice shall forfeit his certificate of membership and all benefits therefrom. On March 27, 1885, there was mailed to the insured a notice that an assessment was due and payable on or before April 6th. It also stated that assessments were payable at its office in cash, or by a sight draft or money order payable to its secretary. On April 4, 1885, the insured sent by mail from Watertown, where he

resided, in time to reach its destination within the 10 days, a check for the amount due, payable to the order of its secretary, this having been the manner in which he had uniformly and without objection made his previous payments; and, although many of the previous checks were not received until after the expiration of the 10 days, no question had been raised by the defendant. It was held that the payment made by the assured on the 4th day of April, by depositing in the post office at Watertown, was a good payment, notwithstanding it did not reach its destination until after the 10th day of April. The court say (page 263, 122 N. Y., and page 303, 25 N. E.):

"The parties apparently had acquiesced in that method of representing the amount as well as in the means of transmission. And the conclusion was warranted that, by the course of dealing by the defendant in that respect, the assured may fairly and in good faith have been led to suppose that the requirement of the defendant upon him was satisfied by mailing, as he did, in his customary manner of doing it, the check for the amount of the last assessment."

In the case of Primeau v. Association, 77 Hun, 418, 28 N. Y. Supp. 794, it was held:

"Where an insurance company authorizes payment of premiums by mail, the payment is made when the letter containing the remittance is deposited in the post office."

That case was affirmed in 144 N. Y. 716, 39 N. E. 858.

In the case of Insurance Co. v. Eggleston, 96 U. S. 572, the court say:

"We have recently, in the case of Insurance Co. v. Norton, 96 U. S. 234, shown that forfeitures are not favored in the law, and that courts are always prompt to seize hold of any circumstance that indicates an election to waive a forfeiture or an agreement to do so on which the party has relied and acted. Any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that, by conforming thereto, a forfeiture of his policy will not be incurred, followed by due conformity on his part, will and ought to estop the company from insisting on a forfeiture, though it might be claimed under the express letter of the contract. The company is thereby estopped from enforcing the forfeiture."

And the court further say (page 578):

"Although, as we held in the case of Insurance Co. v. Davis, 95 U. S. 425, the legal effect of a policy, when nothing appears to the contrary, may be that the premium is payable at the domicile of the company, yet it cannot be expected or understood by the parties that the policy is, in ordinary circumstances, to be forfeited for a failure to tender the premium at such domicile when the insured resides in a distant state, and has been in the habit, under the company's own direction, of paying an agent there, and has received no notice that the contrary will be required of him. He would have a just right to say that he had been misled."

Bacon, in his work on Benefit Societies and Life Insurance (section 362), says:

"Forfeitures are odious, and will only be enforced when there is the clearest evidence that that was the intention of the parties. If, therefore, the company so deals with the assured as to induce a belief that a forfeiture will not be exacted in case of dereliction of payment at the day, and so puts him off his guard, it will not be permitted to take advantage of that which it has encouraged. 'In transactions of this nature,' says the supreme court of Pennsylvania (Helme v. Insurance Co., 61 Pa. St. 107), 'it is easy to mislead by a pretense of liberality, if followed by entire strictness in practice, and the only

cure for this is the inquiry by the jury whether the party has been misled by the former. If so, it is a fraud upon the party's rights, which ought to be condemned and redressed.' "

It is concluded that the payment of the premium which became due and payable on the 1st day of August, 1895, before 12 o'clock noon of that day, was properly made by the insured, and in all respects in accordance with the terms of the contract as it had been construed and was understood by the parties; and that the declaration on the part of the defendant that said policy had lapsed, and its pretended cancellation of the same, were void, and had no binding force or effect as against the insured, and did not in any manner affect her rights, and that her rights were and remained precisely the same after such illegal action on the part of the defendant as they were before.

But it is urged that the illegal and unjust scheme on the part of the defendant, by which it attempted to deprive the insured of her rights under the policy issued to her, has become effectual for that purpose—First, because the insured did not, upon receiving notice of the illegal action of the defendant, promptly protest against such action, although there is no evidence in the case showing, or tending to show, that such protest on her part would have been effectual, or would have in any way modified or changed the plan and determination of the defendant; or, second, because the insured did not tender to the defendant the bimonthly payment which fell due on the 1st day of October, 1895, after the defendant had informed her that her rights under the policy had terminated, and the subsequent premiums falling due while she lived, although there is nothing in the evidence, or any suggestion in the record, that if such payments had been tendered they would have been received by the defendant, and although it is clear that the insured was justified in concluding that the determination of the defendant, notwithstanding it was illegal, would be persisted in, and that it would be an idle ceremony on her part to tender the premiums subsequently falling due; or, third, because the insured did not commence an action to have her policy reinstated, and to have the illegal declaration and action of the defendant so declared by a court of competent jurisdiction during her lifetime, or within a period of 15 months. We know of no rule of law which requires that such action should be commenced within 3, 6, or 18 months, or within any other time, except as specified in the statute of limitations.

The notice sent to the insured by the defendant was absolute and unequivocal, and, as before said, stated, in substance, that her policy had been canceled, and that all her rights thereunder had terminated, for the sole reason that the payment of the premium which became due on the 1st day of August, 1895, had not been made in accordance with the letter of the policy. There was no possible misunderstanding between the parties as to the facts. The defendant knew when it received such premium; knew when it was mailed, as was disclosed by the registered letter which it received; knew when such letter should have reached its destination in the ordinary conduct of the mails. The insured knew when she mailed said let-

ter, and also knew at what time it would, in the ordinary course of the mails, reach its destination. Both parties knew the course of dealing which had existed for more than a year between them in regard to the payment of premiums. Under those circumstances, the insured had a right to assume that the declaration of the defendant was final, and that no action on her part would change or modify such declaration on its part, except by bringing an action to determine her rights.

The defendant is not in a position to urge, as a defense, the fact that the insured did not bring an action within 15 months, for the purpose of having it judicially determined that its action was void, illegal, and unjust. The insured had no means of knowing the exact amount of the premiums which she could fairly be required to pay by the terms of the policy, after August 1, 1895, because of the failure of the defendant to send her notice of such amounts. The defendant had such knowledge. The insured was not required, notwithstanding the strict letter of the policy, to tender to the defendant the amount of the last premium of which she had notice, when such sum might be in excess of the amount which she could legally be required to pay. The condition attached to the policy, which provided, in substance, that, in case a notice stating the amount of the premium failed to reach the insured, she should pay the amount of the last premium, when fairly considered, must be found to have reference to a case of accident or mistake by which such notice failed to reach the insured, and not to a case where, by the willful and illegal act of the defendant, such notice was not attempted to be given by the defendant to the insured. If this is not so, then, in case any assessment becoming due on the 1st day of any month is unusually large, an insurance company such as the defendant may, without reason or excuse, fail to send notice of the amount of subsequent premiums to its insured, and thus compel the continued payment of premiums equal to the last premium paid, although largely in excess of the requirements of the association under the contract with its members. In this case, as before said, there is no pretense or claim on the part of the defendant that it would have received any of the subsequent payments of premium falling due, even if the insured had tendered payment of the same.

In the case of People v. Insurance Co., supra, it was held that a return to the insured by an insurance company of a check for the amount of a premium, with a notification that the remittance was too late, "although not in terms a declaration that the company elected to forfeit the policy, its act in returning the premium was tantamount to such a notification." In that case, so far as is disclosed by the record, after the return of such check no action was taken by the insured during his lifetime, or for a period of six months, at the end of which time he died. His representatives commenced an action to recover the amount of the policy, and it was held that, the payment of the premium having been legally tendered, the plaintiff was entitled to recover, notwithstanding the illegal action on the part of the defendant in returning such check, and, in effect, declaring said policy forfeited.

May, in his work on Insurance (section 358), says:

"Payment or tender of payment of premiums is not necessary where the insurers have already declared the policy forfeited, or done any other act which is tantamount to a declaration on their part that they will not receive it if tendered."

In the case of Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, which was a case in which a forfeiture of life insurance was claimed, the court say:

"The company cannot depend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred. Meyer v. Insurance Co., 73 N. Y. 516. The company kept the secret on its part, and now cannot set up as a defense the nonpayment of premiums which it did not intend or expect to receive, and which it may justly be said to have occasioned by its own unauthorized act."

In the headnote of that case it is said:

"But where a policy in full force was surrendered by the husband without the assent of the assured, and no notices were thereafter sent by the company, either to the insured or the assured, held, that the subsequent failure to pay the accruing premiums did not alone work a forfeiture; that, by the agreement of surrender, the insurance company did an act the tendency and purpose of which was to prevent future payments by the parties interested, and the company cannot defend upon a default to which its own wrongful act contributed, and but for which a lapse might not have occurred; and that the company was liable."

In the case of Meyer v. Insurance Co., 73 N. Y. 516, the headnote is as follows:

"Where, by the terms of a contract, if a payment is not made by a certain day, a harm will come to one party, and a benefit to another, and the amount of the payment required is, from the course of business of the parties, known only to the latter, who refuses to make known the amount, or keeps silence as to it when asked, and in consequence the day goes by without payment being made, he cannot take a benefit from the lapse." Hayner v. Insurance Co.. 69 N. Y. 435.

In the case of Insurance Co. v. Smith, 44 Ohio St. 156, 5 N. E. 417, it was held:

"Where, by the terms of a contract of life insurance, the beneficiary named in the policy is entitled to participate in the profits, a portion of which, in the form of dividends, is to be applied each year in reduction of premiums, and it has been the uniform practice of the company to give timely notice of the amount of premium, amount of dividends, and of the balance to be paid in cash, and the company neglects to give such notice, having knowledge of the residence of the beneficiary, and by reason thereof a premium is not paid at the time specified in the policy, the company cannot set up such failure to pay as a defense to a recovery upon the policy, although by its terms the same is to be forfeited in case of failure to pay a premium upon any of the dates stipulated therein."

The defendant in this case, having willfully and illegally neglected and refused to inform the insured as to the amount of the premiums which she could be required to pay under the terms of the policy, it having been its uniform custom to give such notice, and it alone having the means of knowing the amount of such premiums, should not be permitted to defeat a recovery because of the failure of the insured to make such payments, or to tender the amount thereof, at the time when they became due, respectively. It cannot be said that the premiums which became due subsequent to August 1,

1895, would not have been paid by the insured, if the illegal declaration of the defendant that the policy had lapsed and had become forfeited had not been made, and except for its failure to give notice to the insured of the amount of such premiums.

In the case of Shaw v. Insurance Co., 69 N. Y. 286, the effect of a tender by the insured of the premium which became due upon an insurance policy, the refusal of the defendant to accept the same upon the ground that it had not been tendered or paid within the time required by the terms of the policy, and the declaration of the defendant that the policy, by reason of such failure, had lapsed and become forfeited, were considered. At page 292 the court say, per Folger, J.:

"Where one party to a contract declares to the other party to it that he will not make the performance on the future day fixed by it therefor, and does not, before the time arrives for an act to be done by the other party, withdraw his declaration, the other party is excused from performance on his part, or offer to perform, and may maintain his action for a breach of the contract when the day has passed."

After quoting a number of cases in support of that proposition, the learned judge further says:

"There is no doubt that the defendant repudiated all obligation to the plaintiff, and so declared to her. It would have been a useless act for her, after that, to have sought the defendant and made offer to pay the annual premium. Nor need she, though the defendant had refused future performance, act with effect until the death of her husband, the event which was contemplated by the contract as giving immediate right of action. It was then she sustained the injury which was the cause of damage to her, by the nonperformance by the defendant of its contract. See, in this particular, the remarks and illustration per Grover, J., in Burtis v. Thompson, 42 N. Y. 246. We do not perceive that it alters the rule we have stated that this contract is one of life insurance, and that there might occur several or many occasions when, by its stipulations, the plaintiff might have precedent conditions to fulfill. It is no more incumbent upon a party to such a contract to offer performance of the conditions precedent, because they are many and of periodical recurrence, than upon the promisee, who has but one act to perform. The declaration of the promisor that he will not perform is an excuse for not offering to perform many and successive conditions as well as one; for the same reason exists at the occurrence of each period for performance,—that it would be useless and unavailing to make tender while the declaration was not withdrawn. See Crist v. Armour, 34 Barb. 378."

Bacon, in his work on Benefit Societies and Life Insurance (section 364), says:

"After one refusal to accept the premium, the insured is not bound to make prompt tenders of subsequent premiums on each pay day."

In the case of Hayner v. Insurance Co., supra, it is held that where an insurance company declares, in substance, by its acts, that no premiums, if tendered, will be accepted, the law does not require a tender, as it would be useless and of no avail. Also, see Hartley v. James, 50 N. Y. 38; Delevan v. Duncan, 49 N. Y. 485.

There is no evidence in this case tending to show that the insured in any manner acquiesced in the illegal action of the defendant in declaring that her policy had lapsed and had become forfeited, unless such acquiescence can be inferred from her failure to act during her lifetime, a period of 15 months after such declaration. As-

suming that the insured properly paid the premium which became due on the 1st day of August, 1895, and that the action of the defendant in assuming to cancel the same, and its declaration of forfeiture, were illegal, the insured was entitled to have pursued any one of three remedies: First, she might have brought a suit in equity to have the policy continued in force (Meyer v. Insurance Co., supra); or, second, she might elect to consider the policy at an end, and bring an action to recover the just value of the policy (Fisher v. Insurance Co., 69 N. Y. 161); or, third, having paid the premium, she might wait until the policy became payable by its terms, and then try the question of forfeiture (Day v. Insurance Co., 45 Conn. 480; True v. Association, 78 Wis. 287, 47 N. W. 520; Bac. Ben. Soc. § 376).

The policy in this case became payable, by its terms, to the representatives of the insured upon her death; and therefore they, or any other party interested, had a right to wait until such time, and then bring an action to recover the amount of the policy, and then try the question of forfeiture.

As was said in the case of Shaw v. Insurance Co., supra:

"Nor need she [the beneficiary], though the defendant had refused future performance, act with effect until the death of her husband [the insured], the event which was contemplated by the contract as giving immediate right of action. It was then she sustained the injury which was the cause of damage to her, by the nonperformance by the defendant of their contract."

As before suggested, it was not the right of the defendant in this case, under the contract in question, to determine when such action should be brought, or to determine when any of the other remedies should be commenced, made necessary by its illegal action.

The contention on the part of the appellant that the insured was guilty of laches by reason of her nonaction, after it had illegally declared her policy forfeited, is not supported by the evidence or the circumstances of this case.

In the case of Cox v. Stokes, 156 N. Y., at page 511, 51 N. E. 322, the court say:

"Whether the equitable doctrine of laches, as distinguished from the statute of limitations, now exists in this state, is open to serious doubt. Galway v. Railway Co., 128 N. Y. 132, 143, 28 N. E. 479; Derby v. Yale, 13 Hun, 273; 2 Perry, Trusts, § 869."

Wood, in his work on Limitations (section 62), says:

"While the words 'laches' and 'acquiescence' are often used as similar in meaning, the distinction in their import is both great and important. 'Laches' imports a merely passive, while 'acquiescence' implies active, assent; and while, where there is no statutory limitation applicable to the case, courts of equity would discourage laches and refuse relief after great and unexplained delay, yet, where there is such a statutory limitation, they will not anticipate it, as they may where acquiescence has existed. Laches amount, in fact, only to that inferior species of acquiescence described in the following terms by Kindersley, V. C.: 'Mere acquiescence (if by acquiescence is to be understood only abstaining from legal proceedings) is unimportant, where one party invades the rights of another, and that other does not, in general, deprive himself of the right of seeking redress merely because he remains passive, unless, indeed, he continues inactive so long as to bring the case within the purview of the statute of limitations.'"

The insured having properly paid to the defendant the premium which became due upon the policy in question on the 1st day of August, 1895, and the defendant, notwithstanding such proper payment, having illegally and unlawfully canceled said policy, and declared that it had lapsed and had become forfeited, and that all the rights of the insured thereunder had ceased and terminated, the insured was not called upon to immediately enter upon or commence proceedings for the enforcement or protection of her rights, and the rights of the beneficiary under the policy were in no way impaired because such proceedings were not instituted during the lifetime of the insured, and for a period of 15 months after the illegal action of the defendant.

It follows that the judgment appealed from should be affirmed, with costs. Judgment affirmed, with costs.

FOLLETT and ADAMS, JJ., concur. WARD, J., not voting.

HARDIN, P. J. (dissenting). By the terms of the policy issued by the defendant, the insured was bound to make the payments at Hartford on or before the due days; and by the terms of the policy the amount which was due on August 1, 1895, for premium, the insured was required to pay to the home office. She had received a notice which warned her to the effect that, if she remitted, she must see to it that the remittance actually reached the home office on or before that day, if she wished to avoid a lapse. The prior payments made by her had reached the home office in due time. On the 30th of June, 1895, the defendant's secretary served upon Mrs. Kenyon a notice, addressed to her at box 601, Medina, N. Y., "being the last address upon the books of the said defendant given by the said Frances A. Kenyon as the place where notices relating to the said policy should be sent," that $11.76 would be due on her policy at 12 o'clock noon on the 1st day of August, 1895. Across that notice was printed these words:

"Notice. This premium is payable at the office in Hartford, Conn., on or before 12 o'clock at noon of the 1st day of August, 1895."

Accompanying that notice were the words:

"We call special attention to the conditions of your policy, which require that the payments must be made at Hartford on or before the date due, in default of which your policy will lapse, according to its terms, and all payments heretofore made thereon will be forfeited, and that the member can only thereafter be reinstated at the option of the company, and then only by signing a health certificate, upon which a new policy may, at the option of the company, issue, upon such terms and conditions as the executive committee may require. * * * But it must be distinctly understood that the association is not and cannot be responsible for any loss or delays of the mails. Mailing of the amount of premium is not payment. It must reach the home office on or before the date due, in order to prevent the policy from lapsing."

The trial court in its fifth finding states "that the said notice was duly received by the said Frances A. Kenyon." There is no evidence tending to show that she did not understand the language used in the notice, or that she did not read the notice. The notice given complied with the statute as to form and in every other respect.

Bopple v. Supreme Tent, 18 App. Div. 488, 45 N. Y. Supp. 1096; Laws 1892, c. 690, § 210; Greenwald v. Association, 18 Misc. Rep. 91, 42 N. Y. Supp. 73; Primeau v. Association, 77 Hun, 418, 28 N. Y. Supp. 794; McCluskey v. Association, 77 Hun, 556, 28 N. Y. Supp. 931, affirmed in 149 N. Y. 616, 44 N. E. 1126; Bridge v. Association, 11 Misc. Rep. 658, 33 N. Y. Supp. 553. The remittance of $11.76 did not reach the hands of the defendant until on the 2d day of August, at about 4 o'clock in the afternoon. Upon the trial a concession was made in the following language: "It is conceded by plaintiff's counsel that the envelope containing the $11.76 claimed by the plaintiff to have been mailed by the plaintiff at Medina, July 30, 1895, was not actually received by the defendant until some time on the 2d day of August following." It was shown that it was the custom of the defendant's office, in regard to obtaining letters that came by registered mail, to go after them to the office twice a day, "and for other mail four times a day. The last hour they go for registered mail is 4:30. They go down to the post office, and get the registered mail, at 4:30 in the afternoon." It is contended in behalf of the respondent that, because the company retained the $11.76, a waiver of the forfeiture caused by the failure to deliver to the defendant the remittance of August 1, 1895, took place. It appears that the defendant promptly notified Mrs. Kenyon that its receipt did not constitute a payment, and gave her notice that the policy had lapsed because of the nonpayment of the premium of $11.76 due August 1, 1895. It is averred that the defendant "refused to regard the receipt of the amount of said premium or assessment as a payment of said premium, upon the sole ground that it was not received by it until after August 1, 1895, and notified plaintiff that her policy had lapsed, and had been canceled upon its books, and had become forfeited." The trial court found, in respect to the $11.76 premium due on August 1, 1895, viz.: "That, soon after the receipt of said premium money as aforesaid, the defendant notified the said Frances A. Kenyon that, because the premium had not been received by it until after August 1st, her policy had lapsed, and had been canceled upon its books, and had become forfeited." There was no evidence given on the trial to the effect that Mrs. Kenyon ever demanded back the $11.76, or that the defendant ever declined or refused to pay back that money. Nor is there any evidence that Mrs. Kenyon, after she had received the notice of the lapse of her policy, during her life, which continued some 17 months and 19 days thereafter, made any effort to have her policy restored or reinstated. Under such circumstances, I am of the opinion that the policy was forfeited, and that sufficient circumstances have not been disclosed to warrant the court in finding that there was a waiver of the forfeiture by the defendant. The evidence did not warrant the finding that the defendant intended to accept or retain the $11.76 as a payment of the premium. No subsequent notices were delivered to Mrs. Kenyon, nor subsequent efforts were made by her to pay the succeeding premiums. She having received notice that the company did not intend to accept the money as payment, she, during the 17 months and 19 days of her life, was not in any situation to insist that the company had made a waiver of the

forfeiture, and had assumed to treat her policy as in life. Her omis-
sion to pay premiums thereon evidently was because she knew that
the company had declared the policy lapsed, and that it would not
accept any such premiums if she tendered them, and she, therefore,
herself acquiesced in the forfeiture of the policy. Lantz v. Insurance
Co., 139 Pa. St. 546, 21 Atl. 80; Wyman v. Insurance Co., 45 Hun,
184; Shea v. Association, 160 Mass. 289, 35 N. E. 855; Insurance Co.
v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500; Attorney General v. Insur-
ance Co., 93 N. Y. 70. In Primeau v. Association, 77 Hun, 419, 28
N. Y. Supp. 794, there was prompt action to avoid a forfeiture. The
evidence indicates that the policy had lapsed, and that Mrs. Kenyon,
on the 19th of January, 1897, at the time of her death, and theretofore,
had waived all right to have the same reinstated. The foregoing
views lead to the conclusion that the judgment should be reversed,
and a new trial ordered, with costs to the appellant to abide the
event.

Judgment should be reversed, and a new trial ordered, with costs
to the appellant to abide the event.