**G & T TERMINAL PACKAGING CO., INC., Plaintiff-Appellant,**

v.

**JOE PHILLIPS, INC., Defendant-Appellee.**

**No. 83 Civ. 6351 (BN)(SWK).**

United States District Court, S.D. New York.

July 25, 1985.

Linda Strumpf, New York City, for plaintiff-appellant.

Stephen P. McCarron, Sures, Dondero and McCarron, Silver Spring, Md., for defendant-appellee.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

NEWMAN, Senior Judge of the United States Court of International Trade, sitting by designation:

### Introduction

This proceeding is an appeal pursuant to 7 U.S.C. § 499g(c) from an award of reparations to defendant Joe Phillips, Inc. by the United States Department of Agriculture (U.S.D.A.) in connection with seven railroad carloads of potatoes sold and shipped by defendant to plaintiff, G & T Terminal Packaging Co., Inc.[1]  In accord-

---

1. Reparations were awarded to defendant in the sum of $22,793.50 plus 13 percent interest from

ance with the statute, this matter was tried to the court de novo; however the findings of fact and order of the Secretary are prima facie evidence of the facts therein stated.

Two issues are presented: (1) Did the parties agree upon a reduction of the prices in the seven transactions in question; (2) Was there a breach of contract by defendant in any of the seven transactions; if so, did plaintiff establish its damages?

### The Facts

Defendant corporation is a growers' representative and shipper of produce located in Fresno, California. Plaintiff corporation is a buyer and repacker of produce, mainly potatoes, located in The Bronx, New York. In June and July, 1980 defendant sold and shipped from California to plaintiff's place of business in New York the seven railroad carloads of potatoes in question. All of the contracts were negotiated by Larry Steinberg of Steinberg Bros. Co., a produce broker in Chicago, Illinois. A broker's memorandum confirming each of the transactions was sent by Mr. Steinberg to both parties, specifying that the potatoes were "USONE" and were sold "FOB SP". According to plaintiff's witness Robert M. Steinberg, brother and business partner of the late Larry Steinberg (who passed away in December, 1983), "FOB SP" designates that the potatoes were to be placed "free on board" the rail cars at the shipping point.[2]

In conformance with the parties' contracts, defendant shipped the following seven rail cars of potatoes, with a total invoice price of $35,599.50:

(1) June 19, 1980: UPFE 452139 invoiced as "900 100 # sks US 1B LW potatoes" at $4.50 per cwt (hundred weight), plus a temperature recording device at $22.50, for a total invoice amount of $4,072.50.

(2) June 30, 1980: SFRC 55454 invoiced as "900 100 # US 1A LW potatoes" at $8.50 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $7,672.50.

(3) June 30, 1980: SPFE 451204 containing 900 cwt of potatoes invoiced as "840 100 # US 1 BEE LW potatoes" at $4.00 per cwt and "60 100 US # 1A LW potatoes" at $8.50 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $3,892.50.

(4) July 2, 1980: SPFE 452793 invoiced as "900 100 # US 1 BEE LW potatoes" at $4.00 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $3,622.50.

(5) July 3, 1980: SPFE 456453 invoiced as "900 100 # US 1A LW potatoes" at $8.50 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $7,672.50.

(6) July 3, 1980: SPFE 459800 with contents invoiced as "900 100 # US 1 BEE LW potatoes" at $4.00 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $3,622.50.

(7) July 8, 1980: SPFE 456107 containing 900 cwt of potatoes invoiced as "316 100 # sks LW potatoes" at $8.50 per cwt plus "584 100 # sks BEE LW potatoes" at $4.00 per cwt, plus a temperature recording device at $22.50, for a total invoice amount of $5,044.50.

At the trial, plaintiff introduced in evidence U.S.D.A. inspection certificates on six of the above seven loads indicating that the potatoes arrived in New York in poor condition.[3] The inspection certificates disclose that the potatoes in five of the seven shipments had enlarged lenticels and black

---

August 1, 1980 for the unpaid balance of the invoice prices; additional reparations of $3,148.57 plus 13 percent interest from September 15, 1982 were awarded for fees and expenses.

**2.** See also the definition of an F.O.B. contract in 7 C.F.R. § 46.43(i) and the definition of "suitable shipping condition" in 7 C.F.R. § 46.43(j).

**3.** No inspection certificate was submitted by plaintiff covering car number SPFE 459800. An inspection certificate for car number 454700 (exhibit 15) was received in evidence, but that car number is not one of the seven involved in this action.

or brown discoloration affecting one-fourth or more of the surface. Other defects noted were slimy soft rot, cuts and bruises.

The poor condition of the shipments was telephonically reported by plaintiff's president, Anthony J. Spinale, to the broker, Larry Steinberg, who was advised that plaintiff "did not really want to handle the potatoes" (Tr. 12) because of their poor condition. Steinberg telephonically relayed the problems concerning the seven loads to defendant's president, Joseph A. Phillips. Further, Steinberg asked that Spinale "work it out" (Tr.13, 54–55), inasmuch as "the shipper had no place else to go with them [the loads]" (Tr. 13). Phillips requested, through Steinberg, that Spinale submit substantiating documentation concerning the condition of the shipments which Phillips would review with his grower for consideration of whether or not any adjustments should be allowed.

After "working out" the seven loads, Spinale notified Steinberg of the allowances that he felt were "adequate" (Tr. 20) and deducted these allowances from the invoice prices when he remitted payment.[4] Mr. Spinale explained how he calculated the allowances taken on each load (Tr. 16–17):

> Well * * * there is a rule for what a shipper is allowed by U.S.D.A. standards as far as defects, * * * [i]t's either 7 or 8 percent that they are allowed. So basically * * * I would have to first take off the 8 percent that they would be allowed and probably subtract that from the * * soft rot * * * and then I would take the percentage of what was left, and plus the sorting that would take me to try to clean up these potatoes * * * and that's how I arrived at my allowance.

Thus, on August 6, 1980 Spinale forwarded documentation (Federal inspection certificates, Ryan temperature recorder tapes, etc.) to Steinberg with a check in the amount of $12,806.00 on invoices totalling $35,599.50, as follows:

| Car No. | Invoice Price | Plaintiff's Payment | Unpaid Balance |
|---|---|---|---|
| 452139 | 4,072.50 | 450.00 | 3,622.50 |
| 55454 | 7,672.50 | 3,150.00 | 4,522.50 |
| 451204 | 3,892.50 | 900.00 | 2,992.50 |
| 452793 | 3,622.50 | 900.00 | 2,722.50 |
| 456453 | 7,672.50 | 3,600.00 | 4,072.50 |
| 459800 | 3,622.50 | 900.00 | 2,722.50 |
| 456107 | 5,044.50 | 2,906.00 | 2,138.50 |

The court finds that the allowances taken by plaintiff were never agreed to by Phillips. No credit memos were issued by Phillips to plaintiff on any of the seven loads in question. Moreover, no memorandum or documentation of any kind was made by the broker concerning the claimed allowances. Defendant refused to accept plaintiff's check as full payment for the seven shipments and advised the broker that he was not willing to agree to any allowances.

By letter of August 19, 1980 defendant herein filed a complaint with U.S.D.A. to initiate reparation proceedings pursuant to 7 U.S.C. § 499a et seq. Thereafter, the parties agreed that the $12,806.00 paid to defendant was an undisputed amount and the complaint would proceed on the balance of the invoice price, $22,793.50. After an oral hearing, a decision and order was issued by U.S.D.A. on September 15, 1982 awarding reparations to defendant in the amount of $22,793.50 with interest, and further awarding an additional reparation for fees and expenses in the administrative proceeding in the amount of $3,148.57, plus interest. The U.S.D.A. Judicial Officer found that plaintiff herein had not produced sufficient evidence to prove that defendant had agreed to any adjustments or allowances on the invoice prices. Respecting the question of breach of contract, the Judicial Officer found against plaintiff herein concluding that plaintiff had failed to carry its burden of proof that the transportation conditions relating to these F.O.B. shipments were normal.

On September 27, 1982 plaintiff herein filed a petition to reopen the hearing before U.S.D.A. to receive the testimony of the

---

**4.** Phillips never directly communicated with Spinale (Tr. 112).

broker, Larry Steinberg, who was unable to appear at the original hearing because of a critical illness. U.S.D.A. granted plaintiff's petition to the extent that the parties were permitted to take the broker's deposition by written interrogatories in Florida. A stay order was issued on November 5, 1982. After reconsideration of the case in light of the new evidence submitted, a second decision was issued by the Judicial Officer on July 28, 1983, reaffirming his original decision awarding reparations to defendant herein. In the second decision, the Judicial Officer again concluded that plaintiff had failed to prove that defendant had agreed to any adjustments or allowances in the invoice prices on any of the seven loads.

## Opinion

### I.

We initially consider plaintiff's claim that defendant agreed to the allowances taken by plaintiff on the invoice prices of the seven shipments in question. Defendant strenuously denies that any allowances or adjustments were granted on any of the loads. This issue is essentially one of fact, and involves to a large degree the credibility of the sharply conflicting evidence.

■ As noted, *supra,* U.S.D.A. found that Phillips did not agree to an allowance on any of the contracts. Pursuant to 7 U.S.C. § 499g(c) that finding must be regarded in this action as prima facie evidence on the factual issue presented. Based upon an assessment of the additional evidence presented to this court, we are constrained to adhere to U.S.D.A.'s finding.

At the trial, plaintiff offered the testimony of Robert Steinberg, brother and business partner of Larry Steinberg at the time of the subject shipments in 1980–81. Robert admittedly had "nothing to do with the actual transactions at that time" (Tr. 52), and testified on the basis of alleged telephone conversations he overheard between his brother and Phillips and discussions with his brother relating to the allowances. Credibility aside, Steinberg's testimony, having no basis whatever in personal knowledge, is entitled to little if any weight as compared with the direct and convincing testimony of Phillips who emphatically denied that he had agreed to the allowances taken by plaintiff. Moreover, in view of defendant's exhibits A and B,[5] the court finds a problem with the credibility of Spinale and Steinberg in their testimony that "word of mouth" allowances were granted by Phillips. These exhibits raise a strong inference that the absence of a written confirmation or credit memo indicates that no allowances were granted with respect to the seven transactions at issue. Furthermore, the court finds it difficult to believe that the substantial allowances claimed by plaintiff[6] would not have been documented in some fashion by either Larry Steinberg or Phillips if they had in fact been granted.

While the court fully agrees with the observations of U.S.D.A.'s Judicial Officer that ordinarily the testimony of an unbiased broker who is not an interested party in the proceeding would be given great weight, we also agree with the Judicial Officer's observation: "in this case, because of the ambiguous, inconsistent nature of Mr. [Larry] Steinberg's statements and actions, we must conclude that his claim that Mr. Phillips granted allowances to respondent [plaintiff herein], made in his answer to interrogatory 44, is not deserving of controlling weight." Decision on Rehearing, Reargument and Reconsideration, July 28, 1983, at 2–3.

After having carefully reviewed U.S.D.A.'s finding on the allowance issue and the

---

**5.** Exhibit A is a written confirmation in an unrelated transaction sent by the broker to these very parties of an allowance on a carload of potatoes shipped by defendant to plaintiff at the same time and under the same sale terms as the seven loads in this case. Exhibit B is a credit memo issued by Phillips to G & T Terminal Packaging Co., Inc. for the adjustments allowed on the same load which is the subject of exhibit A.

**6.** The allowances taken by plaintiff were nearly two-thirds of the invoice prices, *viz.,* plaintiff paid but $12,806.00 on $35,599.50 total invoiced prices.

credibility and weight of the additional evidence of record in the current proceeding, the court concludes that plaintiff has failed to establish that defendant agreed to the allowances taken by plaintiff.

## II.

We turn to plaintiff's breach of contract claim. Plaintiff maintains that even if the court should find that no allowances were agreed upon by the parties, plaintiff nevertheless is entitled to recover damages for breach of contract for six of the seven shipments on the ground that defendant shipped poor quality potatoes.

The U.S.D.A. inspection certificates covering car numbers 55454, 451204, 452793, 456453 and 456107 disclose that significant percentages of these five shipments had condition defects, particularly enlarged lenticels and brown discoloration, which have their genesis in the field or packing sheds rather than in abnormal transportation conditions (Tr. 85).[7] The issue raised here of field-related versus transit-related defects was not considered by U.S.D.A. in its decision and order of September 15, 1982.

, In support of its argument that enlarged lenticels and browning are field-related rather than transportation-related defects, plaintiff submitted a copy of pages 59 and 61 of Agricultural Handbook No. 479, Market Diseases of Potatoes, issued in March 1978 by the Agricultural Research Service, U.S. Department of Agriculture, available through the Superintendent of Documents, U.S. Government Printing Office. The court takes judicial notice of the facts stated in this authoritative government publication under Fed.Rules Evid. Rule 201, 28 U.S.C.A. *See also Garden State Farms,*

*Inc. v. Johnston-Gibson Sales Company,* 42 A.D. 155 (1983).

■ A buyer may establish a breach of an F.O.B. contract by the seller even where there is abnormal transportation, if the nature of the defects or deterioration could not have been caused by the abnormal transportation. *Farm Market Service, Inc. v. Albertson's Inc.,* 42 A.D. 429 (1983); *Horwath and Co., Inc. v. A & J Produce Corp.,* 42 A.D. 669 (1983) and *Jack Baillie Co., Inc. v. S & K Farms, Inc.,* 32 A.D. 1874 (1973). The court holds, therefore, that irrespective of any abnormal transportation conditions in the five rail cars mentioned above, defendant breached its contracts of sale for U.S. No. 1 potatoes F.O.B. shipping point.[8]

■ However, the court is unable to accept plaintiff's measure of damages based upon the percentage of decay of the potatoes, corresponding to the allowances deducted from the invoice prices as explained by Mr. Spinale at the trial. It is well established that to prove its damages for breach of contract, a buyer must produce evidence showing the price it obtained for the potatoes on resale, since the measure of damages is the difference between the actual value of the potatoes and the value of potatoes if they had been in the condition as warranted. *Tom Bengard Ranch, Inc. v. Garden State Farms, Inc.,* 42 A.D. 922 (1983); *Farm Market Service, Inc., supra; Horwath and Co., Inc., supra; "Big Red" Tomato Packers v. Kenneth P. Davis,* 41 A.D. 1796 (1982); *Douglas Case v. Samuel Simon Petro,* 41 A.D. 1825 (1982); *LaMantia-Cullum-Collier Co., Inc. v. Zia Brokerage Corporation,* 41 A.D. 2450 (1982); *Pleasant Valley Vegetable Co-Op v. Robert T. Cochran & Co.,*

---

7. As noted *supra,* no U.S.D.A. inspection certificate for car No. 459800 was submitted by plaintiff. The inspection certificate for car No. 452139 discloses neither enlarged lenticels nor browning, but only slimy soft rot. Since plaintiff failed to establish normal transportation service and conditions for that load, the shipper cannot be held liable for abnormal deterioration. *Tepeyac Produce, Inc. v. Cumberland Produce Co., Inc.,* 42 A.D. 612 (1983); *O.P. Murphy Produce Company, Inc. v. Kelvin S. Ng,* 41 A.D.

772 (1982); and *Dave Walsh Co., Inc. v. Rozak's Produce Co., Inc.,* 39 A.D. 281 (1980).

8. *See* United States Standards for Grades of Potatoes, published by U.S.D.A., Food Safety and Quality Service, Washington, D.C. (35 F.R. 18257), effective September 1, 1971, as amended (37 F.R. 2745), February 5, 1972, § 2851.1546 (Tolerances).

*Inc.,* 41 A.D. 1208 (1982); *C.J. Prettyman, Jr., Inc. v. D.J. LaMantia Inc.,* 41 A.D. 1614 (1982). Accordingly, plaintiff was required to submit a detailed accounting covering resale of the potatoes and its costs incurred in sorting. But plaintiff submitted no accounting whatever. Hence, this court, unfortunately, has no proper basis on which to award plaintiff damages for defendant's breach of contract.

In summary, the court finds:

(1) Plaintiff failed to prove by a preponderance of credible evidence that the allowances unilaterally taken by plaintiff were agreed to by defendant.

(2) Plaintiff also failed to submit proper evidence of its damages for breach of contract respecting the field-related defects in the five shipments mentioned *supra.*

Judgment shall be entered in favor of defendant against plaintiff in the sum of $22,793.50 for the unpaid balance of the invoice prices; and judgment shall be entered in favor of defendant in the sum of $3,148.57 for fees and expenses in the reparation proceeding before U.S.D.A.

Additionally, judgment shall be entered for defendant in the sum of $5,331.25 for attorney's fees incurred by defendant in the present proceedings.[9]

As noted *supra* (footnote 1), U.S. D.A. awarded defendant herein interest in its reparation order. Fundamentally, an award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the court and is governed by considerations of equity and fairness. *Twin City Sportservice, Inc. v. Charles O. Finley & Co., Inc.,* 676 F.2d 1291, 1310 (9th Cir.1981), *cert. denied,* 459 U.S. 1009, 103 S.Ct. 364, 74 L.Ed.2d 400 (1982); *United States v. California State Board of Equalization,* 650 F.2d 1127, 1132 (9th Cir.1981), *aff'd.,* 456 U.S. 901, 102

S.Ct. 1744, 72 L.Ed.2d 157 (1982); *Payne v. Panama Canal Co.,* 607 F.2d 155, 166 (5th Cir.1979). The present action, by statute, is a trial de novo, and clearly the court is not bound by an award of interest by U.S. D.A. Predicated on all the facts developed in the record before the court, equity and fairness dictate that the substantial prejudgment interest (approximately $16,000.00) requested by defendant be disallowed. Defendant, of course, is awarded mandatory post-judgment interest in accordance with 28 U.S.C. § 1961.

Further, defendant's request for costs is disallowed.

The foregoing constitutes the court's findings of fact and conclusions of law in accordance with Rule 52(a), Fed.R.Civ.P.

---

9. A determination of the appropriate amount of fees to be awarded involves consideration of a number of factors, such as the amount of time spent on this case, "the amount of work necessary, the amount of work done, the skill employed, the monetary amount involved and the result achieved". *Orgel v. Clark Boardman Co.,* 301 F.2d 119, 122 (2d Cir.), *cert. denied,* 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58 (1962). *See also City of Detroit v. Grinnell Corporation,* 495 F.2d 448 (2d Cir.1974). The amount of counsel fees requested by defendant constitute a reasonable award under the above-described criteria, and the amount is not disputed.