G & T TERMINAL PACKAGING CO.,
INC., Appellant-Cross-Appellee,

v.

JOE PHILLIPS, INC.,
Appellee-Cross-Appellant.

Nos. 975, 1165, Dockets
85–7845, 85–7847.

United States Court of Appeals,
Second Circuit.

Argued April 2, 1986.

Decided Aug. 5, 1986.

Linda Strumpf, Bronx, N.Y., for appellant-cross-appellee.

Stephen P. McCarron, Sures, Dondero & McCarron, Silver Spring, Md., for appellee-cross-appellant.

Before OAKES, MESKILL, and NEWMAN, Circuit Judges.

PER CURIAM:

Appellant G & T Terminal Packaging Co., Inc. (G & T), seeks review of a determi-

nation of the United States District Court for the Southern District of New York, Bernard Newman, Judge of the United States Court of International Trade, sitting by designation, holding it liable for the unpaid balance on a shipment of potatoes, plus expenses and fees in proceedings before the United States Department of Agriculture (USDA) and attorneys' fees in the district court proceeding. 618 F.Supp. 127 (S.D.N.Y.1985).

Joe Phillips, Inc. (Phillips), shipped from California to New York, FOB shipping point, seven railroad carloads of potatoes. Inspection by the USDA on arrival indicated that six carloads of potatoes had defects in excess of those permitted for potatoes of their grade. G & T's president contacted the produce broker who had negotiated the contract and told him that G & T "did not really want to handle the potatoes." The broker encouraged him to "work them out," since "the shipper had no place else to go" with the potatoes and promised "some kind of an agreement on whatever the problem might have been." G & T took the potatoes, deducted that portion of the purchase price attributable to the percentage of rotten potatoes found by the inspector in excess of the level permitted for the grade, subtracted sorting costs, and paid the difference. Phillips claimed it had never consented to the adjustment and brought a USDA reparations proceeding under 7 U.S.C. § 499g (1982), pursuant to the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a–499s (1982 & Supp. II 1984), for the remainder of the invoice price. The USDA officer found for Phillips, on the ground that G & T had not sustained its burden of showing the transportation of the potatoes was normal, and thus did not prove breach. On de novo review, the district court reversed the USDA and held that Phillips did breach its contract of sale, but that because G & T did not submit a detailed accounting of the resale price it obtained for the potatoes and of its sorting cost, the court had no basis to award damages. It therefore gave Phillips judgment for the total amount of the purchase price, fees in the USDA proceeding, and attorneys' fees in the district court proceeding. We reverse and remand for further findings.

The district court based its reversal in part on information in Agricultural Handbook No. 479, of which the court took judicial notice, apparently after the close of the evidence; presumably the facts referred to by the district court were those relating to brown discoloration, enlarged lenticels, and slimy soft rot, from which the court inferred that the potatoes' defects were field-related rather than transit-related. Phillips objected to the submission of the Handbook on the basis that it was hearsay and there was no opportunity to rebut it, but this objection was not passed upon by the district court, except implicitly in its opinion by the taking of judicial notice. Had the defects been transit-related, there would not have been a breach, since risk of loss passed at the shipping point. 7 C.F.R. § 46.43(i) (1986). Phillips argues that the nature of the damage was not a matter "not subject to reasonable dispute," Fed.R. Evid. 201(b), and that the source of various potato defects is neither "generally known" nor "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*

But we think that the court's inference that the defects were field-related, and hence its conclusion that there was a breach of contract, could be supportable on another basis. Joseph Phillips testified that temperature recording tapes which evidenced the temperature conditions during transit were in the sole possession of Phillips, which apparently failed to produce them. From this it would seem fair to infer that the tapes bore evidence of appropriate transit conditions. The problem is that the district court drew no such inference. Such an inference, when taken with the testimony of Thomas Leming, a USDA employee, to the effect that enlarged lenticels are a growing defect rather than a transit-induced defect, suggests that it would not be clearly erroneous for the district court to find a Phillips breach of con-

tract. Since we are remanding on damages in any event, we will remand on liability for further findings, permitting the district court to adduce such additional evidence, including that supporting or opposing the inference drawn from the Agricultural Handbook, as to the district court may seem appropriate.

 The issue, assuming a finding of liability, would then be whether a buyer of defective goods may recover damages based solely on an inspection certificate indicating the goods were defective, with no evidence of what damages flowed from the breach. The party refusing to pay has the burden of showing damages by a preponderance of the evidence. *Arkansas Tomato Co. v. M–K & Sons Produce Co.*, 40 Agric.Dec. 1773, 1777 (1981). But there are contrary opinions. *Compare Case v. Petro*, 41 Agric.Dec. 1825, 1827–28 (1982) (holding failure to submit accounting of resale precluded buyer from refusing to pay in full for tomatoes because no adequate basis existed for assessing damages), *with Brown & Hill v. U.S. Fruit Co.*, 20 Agric.Dec. 891, 895 (1961) (estimating value of salvaged produce to ascertain damage); *C & G Onion Co. v. Bushman's Inc.*, 40 Agric.Dec. 117, 120 (1981) (where off-grade potatoes were allegedly dumped but might have been resold and no evidence of market prices for distressed merchandise, court estimated value of potatoes). While the USDA is reluctant to estimate damages without an accounting of proceeds on resale, it may do so and may even estimate damages where there is resale data, if it finds the accounting unpersuasive. *See Arkansas Tomato Co.*, 40 Agric.Dec. at 1778.

 Since the USDA does not hold consistently that damages may never be awarded absent evidence of resale proceeds, we believe it was error to conclude that, as a matter of law, damages could not be awarded in the absence of evidence of resale value.

However, while the USDA report may be evidence of damage to the goods, it does not amount to conclusive evidence of the potatoes' complete lack of value. Further factfinding on the damage issue is therefore needed. Especially in light of the expert testimony that some allowance greater than 8% would be allowed for deterioration en route where the contract was FOB shipping point, we remand also for a determination of what G & T was contractually entitled to receive and what the value was of what it did receive. Such an assessment may take into account any negative inferences that may be drawn from G & T's failure to keep resale, sorting, and dumping records.

On remand the district court may accept such additional evidence on liability or damages as may be properly proffered.

Judgment in accordance with opinion.